UNITED STATES, Appellee

v.

DAVID G. CASTILLO, Seaman, U. S. Navy, Appellant

1 USCMA 352, 3 CMR 86

No. 449

Decided May 2, 1952

CDR. Raymond van Wolkenten, USN, for Appellant.
CDR. Malcom J. Bradbury, USN, for Appellee.

Opinion of the Court

PAUL W. BROSMAN, Judge:

Castillo was charged with an 11-day absence without leave from his unit, located at the United States Naval Air Station, Corpus Christi, Texas—this in violation of the Uniform Code of Military Justice, Article 86, 50 USC § 680. He was tried by special court-martial

at the named Air Station on December 28, 1951. He pleaded guilty, was found guilty, and was sentenced to receive a bad-conduct discharge, to forfeit $25.00 per month for 3 months, and to be confined at hard labor for 3 months. The convening authority suspended the execution of the punitive discharge, but otherwise approved the findings and sentence, and this action received the approval of the supervisory authority, the Chief of Naval Air Advanced Training. The record was thereafter considered by a board of review in the office of The Judge Advocate General, United States Navy, which affirmed the findings of guilty, but reduced the sentence to confinement at hard labor for 33 days and a forfeiture of $16.50 per month for 3 months. This action was taken by the board on the basis of a theory reflected in the following quotation from its opinion:

"The court considered five previous convictions set forth in Prosecution's Exhibits 1, 2, 3, 4 and 5. These exhibits were not introduced by a sworn witness as required by paragraph 75b(2), Manual for Courts-Martial, United States, 1951.

"The sentence was therefore in excess of the limits prescribed (MCM, 1951, p 220), since, without properly admitted evidence of previous convictions, the maximum permissible sentence is three days' confinement at hard labor and two days' forfeiture of pay for each day or fraction of a day of absence."

The cause is before us on certificate from The Judge Advocate ■ General, United States Navy, proposing the following question:

"Were Prosecution Exhibits 1, 2, 3, 4 and 5 received into evidence and therefore properly before the special court-martial when it deliberated upon the sentence?"

Following announcement in open court of findings of guilty as charged, and presentation of personal data, page 8 of the record reflects the following exchange among the trial counsel, the reporter, and the president of the court-martial:

"TRIAL COUNSEL: I have evidence of five previous convictions of offenses committed during the current enlistment and within three years preceding the commission of an offense of which the accused has been convicted at this trial to submit.

"TRIAL COUNSEL: Request that the reporter mark these exhibits for identification.

"REPORTER: These will be Prosecution Exhibits 1, 2, 3, 4, and 5, for identification.

"TRIAL COUNSEL: Prosecution Exhibits 1, 2, 3, 4, and 5 for identification are offered in evidence as Prosecution Exhibits 1, 2, 3, 4, and 5, and permission is requested to withdraw them at the conclusion of the trial and substitute true copies therefor.

"PRESIDENT: Prosecution Exhibits 1, 2, 3, 4, and 5 for identification are admitted in evidence as Prosecution Exhibits 1, 2, 3, 4, and 5, and true copies may be substituted."

The trial counsel then stated informally but fully to the court—using the exhibits as notes—the nature of the previous convictions as reflected in the duly admitted service record court memoranda. The following colloquy between the trial counsel and the defense counsel is then reported on page 9 of the record:

"TRIAL COUNSEL: Has the accused any objection to the evidence of previous convictions read?

"DEFENSE COUNSEL: No objection."

It thus appears (1) that the trial counsel was not sworn as a witness; (2) that Prosecution Exhibits 1, 2, 3, 4, and 5 were declared to be admitted in evidence by the president of the court-martial; and (3) that the trial counsel digested their contents informally but in complete detail for the benefit of the members of the court. It does not appear in the record that the exhibits were specifically and formally tendered by the trial counsel to the defense counsel for his inspection

at the time of offer and prior to admission. However, after admission, and following the presentation of the trial counsel's unsworn oral abstract, the defense counsel stated categorically that he had no objection to the evidence of previous convictions. It should be said that certified true copies of Prosecution Exhibits 1, 2, 3, 4, and 5 are appropriately bound with the record of trial.

The Manual for Courts-Martial, United States, 1951, paragraph 127c, Section B, provides as follows:

"If an accused is found guilty of an offense or offenses for none of which dishonorable or bad conduct discharge is authorized, proof of two or more previous convictions will authorize bad conduct discharge and forfeiture of all pay and allowances and, if the confinement otherwise authorized is less than three months, confinement at hard labor for three months."

In view of the maximum punishment established for the specific offense of which the accused was charged in the instant case, it is apparent that the court-martial relied on the Manual provision quoted above in determining the sentence it imposed. See Manual for Courts-Martial, supra, paragraph 127c, Section A, page 220. It is, therefore, necessary that at least two of the previous convictions offered have been properly before the court if the punishment assessed is to be sustained. The board of review appears to have held that no proposed previous conviction was so before the court, for the reason that the evidence's proponent, the trial counsel, had not been sworn as a witness at the time the exhibits were offered. We now address ourselves to this problem.

Reference was made by the board of review in its opinion in the case at bar to the provisions of the Manual for Courts-Martial, United States, 1951, paragraph 75b(2), and pertinent language therefrom is set out below:

"*Evidence of previous convictions.* —The trial counsel will next introduce evidence of any previous convictions of the accused by courts-martial. Such evidence is not limited to offenses similar to the one of which the accused stands convicted. The evidence must, however, relate to offenses committed during a current enlistment, voluntary extension of enlistment, appointment, or other engagement or obligation for service of the accused, and during the three years next preceding the commission of any offenses of which the accused stands convicted. . . .

. . . . . . .

"Subject to the rules as to documentary evidence, including the rules as to the use of copies, previous convictions may be proved by the order publishing the result of trial. Ordinarily, however, they are proved by the service record of the accused or an admissible copy or extract copy thereof. In the absence of objection, an offense may be regarded as having been committed during the prescribed three-year period unless the contrary appears. If the defense objects, the court shall determine the issue."

Despite the previous practice obtaining in Naval court-martial administration under the Articles for the Government of the Navy, 34 USC § 1200, and Naval Courts and Boards, 1937, it appears that the passage above quoted from the Manual for Courts-Martial, supra, contains no requirement that the trial counsel be sworn testimonially at the time he presents evidence of previous convictions. Moreover, we are aware of no provision of the Uniform Code of Military Justice, or other language of the Manual established thereunder, setting up such a requirement— and our attention has been directed to none through diligence of counsel. The general subject of proof of prior convictions was considered by us not long since in United States v. Carter (No. 159), 1 USCMA 108, 2 CMR 14, decided January 18, 1952. We certainly implied there, as we hold here, that no fixed method for the introduction of evidence in such a situation has been provided by authoritative directives, and certainly that the sworn testimony of the trial counsel is not demanded either as a primary source of proof, or

as a necessary predicate to documentary evidence. In the Carter case, in fact, we said that:

"Evidence [including evidence of previous convictions] may be presented to a court in various ways. These consist of the testimony of sworn witnesses, by stipulations, by admissions in open court, by written instruments, and perhaps by other methods."

This, we believe, disposes of the ground assigned by the board of review for its action in reducing the sentence imposed by the court-martial in this case. However, the question certified by The Judge Advocate General is couched in somewhat broader language, and asks whether the mentioned exhibits were received in evidence and properly before the court at the time it considered punitive measures. We shall now deal with this wider inquiry.

Although it would certainly be possible in a proper case to establish the existence of prior convictions through the sworn testimony of witnesses, including the trial counsel, it is apparent that this procedure was not followed in the present case. Instead the Government sought to show these facts by means of data contained in the service record of the accused. See Manual for Courts-Martial, supra, paragraph 75b (2), page 120. Service records constitute an example of hearsay evidence, but are admissible as an exception to the hearsay rule because they meet the official records test. Likewise, extract copies from service records are admissible in evidence as an exception to this prophylactic principle. See United States v. Carter, supra; United States v. Masusock (No. 15), 1 USCMA 32, 1 CMR 32, decided November 9, 1951. In speaking of official records, the Manual for Courts-Martial, supra, paragraph 144b, says:

"An official statement in writing, whether in a regular series of records or a report, made as a record of a certain fact or event is admissible as evidence of the fact or event if made by an officer or other person in the performance of an official duty, imposed upon him by law, regulation, or custom, to record such fact or event and to know, or to ascertain through appropriate and trustworthy channels of information, the truth of the matter recorded. It may be presumed, prima facie:

"That a person who had such a duty performed it properly.

. . . . . . .

"Examples of military records containing entries which may be admissible under this exception to the hearsay rule are enlistment papers, physical examination papers, outline-figure and fingerprint cards, morning reports, guard reports, *service records,* logs, unit personnel diaries, and individual equipment records." [Italics supplied]

Reference is made to two additional Manual passages of relevance to the present inquiry. The first is found in paragraph 143b(1), page 260, and reads as follows:

"A writing that is not authenticated may not properly be received in evidence, *but proof of authenticity can be waived by a failure to object, on the ground of lack of such proof,* to the admissibility of the writing. A writing may be authenticated by any competent proof that it is genuine—is in fact what it purports to be. It may be authenticated by a certificate or other written statement only when such certificate or statement is admissible as an exception to the hearsay rule." [Italics supplied]

And the second appears in paragraph 143b(2)(a), page 261, and reads as set out below:

"As in the case of other writings, an official record, or copy thereof, must be properly authenticated, *although proof of authenticity can be waived.* Official records are generally proved by duly authenticated copies thereof. Originals may be authenticated in the same manner as copies, except that if an attesting certificate is used it should indicate that the document is an original. In the case of a copy of an official rec-

**355**

ord, an 'attesting certificate' is a certificate or statement signed by the custodian of the record, or by his deputy or assistant, indicating that the paper in question is a true copy of the original and that the signer is acting in an official capacity as the keeper of the original, or as his deputy or assistant. An 'authenticating certificate' is a signed certificate or statement indicating that the signer of the attesting certificate is the official he purports to be, or that the attesting certificate is in proper form, or containing words of like import.

"A custodian of an official record is a person who has custody thereof by authority of law, regulation, or custom, that is, a person in whose office the record is officially on file. An attestation in the form of an attesting certificate, when duly authenticated, is prima facie sufficient to show such official custody in the keeper. Some attesting certificates may be authenticated by taking judicial notice of the signature thereto (see 147a). Others require authentication by seal, accompanying certificate, or other proof of genuineness, according to whatever procedure is adequate to authenticate the official record attested." [Italics supplied]

Certainly the trial counsel did not present affirmatively evidence authenticating the items from the service record of the accused offered in the case at bar. Certainly too the accused could have required the Government to establish through the testimony of the trial counsel, or in some other appropriate manner, that the documents offered were in fact authentic records relating to the accused. We do not doubt that the Government could have met this demand without difficulty. Defense counsel could indeed have challenged the offered evidence of previous convictions either on the facts or on the law. He chose to do neither, however. In our opinion—and in the Manual language quoted above—he "waived [proof of authenticity] by a failure to object on the ground of lack of such proof."

**356**

We believe the military practice in all of these particulars is supported by that of civilian courts, whose holdings are reflected in the following quotation from Wharton, Criminal Evidence, 11th ed, 1935, § 807:

"In order to introduce any document or any record, it must appear that it is what it purports to be. Its authenticity and genuineness must be established by the evidence of witnesses, evidence appearing on its face, or by showing the custody from which it came. Thus, the foundation for the admission of a document may be laid by proving the facts attending its execution; the signature or handwriting of the person who is purported to have signed or executed the instrument; the identification of the document by a witness who is familiar therewith; the admission of the party against whom it is sought to introduce the writing; the supervision, control, and knowledge of the contents of a document by the party against whom it is sought to be used; the proper custody of a public document or ancient record; or by the proper certification of an official record. Without such proof, there is nothing to show that the document is not the result of an act of a stranger or some other person. . . . It is not necessary, however, that a document be authenticated or its genuineness proved by direct evidence, but circumstantial evidence, if satisfactory, is sufficient to lay a foundation for the admission of a document."

In Wigmore, Evidence, 3d ed, 1940, § 18, we are told that:

"The initiative in excluding improper evidence is left entirely to the opponent,—so far at least as concerns his right to appeal on that ground to another tribunal. The judge may of his own motion deal with offered evidence; but for all subsequent purposes it must appear that the opponent invoked some rule of Evidence. A rule of Evidence not invoked is waived."

And again in the same section Dean Wigmore says:

"So, too, of the auxiliary rules, such as the production of a documentary original, or its authentication; in so far as these objections may be curable in the interval before trial, they should be made before trial.

"When the trial comes, it is necessary to make formal objection, even when objection was already made before trial, because the original objection was essentially only a notice to the proponent and there was no opportunity for securing a judicial ruling upon it.

"A failure to object at one trial precludes the opponent at any subsequent trial from further objection, for the reason and to the extent that a failure to object before the first trial would have precluded him. And of course no objection at all will be heard when made for the first time in the court of appeal."

We have not omitted from our consideration the fact that the documents in this case may not have been tendered to the defense counsel for inspection at the time of offer. While the usual practice would indeed dictate such a course, we cannot suppose that a mere failure to do so, without more, is fatal. Certainly the exhibits would have been made available on request of the defense counsel, and it is unlikely that such a demand would have been omitted had the accused wished to challenge the convictions as facts, or to attack the authenticity of the proffered official memoranda. In speaking thus we have no wish to modify any views expressed by us in the Carter case, supra, or in United States v. Zimmerman (No. 261), 1 USCMA 160, 2 CMR 66, decided February 7, 1952. It must be apparent that both of these cases are clearly distinguishable on their facts from the case at bar. It would, of course, have been better here to have afforded the defense counsel formal opportunity for inspection, and the trial counsel should indeed have tendered the documents for this purpose. This is not to say, however, that it was mortal error not to have done so. At most a procedural irregularity transpired, which could have been rectified immediately on application. It is entirely possible, of course, that explicit tender was in fact made in this case and not reflected in the record. It is to be noted that the standard form of court-martial record does not provide for an affirmative showing of tender. Consequently unless some verbal exchange took place in the instant case on the subject, the record would not necessarily contain any reference thereto. See Manual for Courts-Martial, United States, 1951, Appendix 8, Guide—Trial Procedure, pages 499, 520. Actually, with this possible single exception, the practice followed by the trial counsel in this case accorded identically with suggestions of this Court made in the Carter case, supra, where it was said that:

"As a matter of practice, it would appear to be more desirable to have the document marked as an exhibit, shown to the accused, its admissibility determined, and, if admitted in evidence, then permit the trial counsel to read it to the court. While this procedure alters the order of events prescribed by the guide, it would have a tendency to prevent trial counsel from forgetting to offer the exhibit, which is apt to happen after it has once been read."

Several additional issues were introduced in the brief and argument of appellate defense counsel, and ably and forcefully presented to this Court. We have never hesitated to go beyond the question proposed by The Judge Advocate General in the exercise of our certificate jurisdiction, but have sought to review the entire record with care. See United States v. Zimmerman, supra. We have, therefore, considered these additional claims fully, and find them either to be disposed of inferentially hereinbefore, or to be without merit. No detailed treatment of them is believed necessary to a proper disposition of this case.

The certified question is therefore answered in the affirmative. However, this does not entirely dispose of the controversy. In United States v. Gilgallon (No. 286) 1 USCMA 263, 2 CMR 170, decided March 21, 1952, we used the following language, which is set

out below with approval for application in the present case:

"As previously stated, the board of review is granted the authority to approve only so much of a sentence as it believes correct in law and in fact and determines, on the basis of the entire record, should be approved. The board has only approved so much of the sentence as did not involve a forfeiture; and, while it erred on a principle of law which should be corrected, we do not express an opinion on whether the case should be reconsidered on the entire record. While this Court can not increase the severity of a sentence affirmed by a board of review we have no disposition to influence any subsequent action it may believe legally justified by the record."

The record is returned to The Judge Advocate General, United States Navy, for action not inconsistent with this opinion.

Chief Judge QUINN and Judge LATIMER concur.