UNITED STATES, Appellant

v.

STANLEY RENNIS WELLMAN, Private First Class,
U. S. Marine Corps, Appellee

4 USCMA 348, 15 CMR 348

No. 4364

Decided May 21, 1954

LCDR Robert R. Marsh, USNR, for Appellant.
LCDR Benjamin H. Berry, USN, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was tried by general court-martial upon two charges. The first, to which he pleaded guilty, alleged a violation of Article 92, Uniform Code of Military Justice, 50 USC § 686, in that he failed to obey a lawful order. In view of the plea, there is no question now raised about that particular charge. The second charge included two specifications alleging desertion under Article 85, 50 USC § 679. The period of absence in both specifications was from March 8, 1953, until the accused was apprehended on July 7, 1953. The first specification alleged desertion with intent to remain away permanently, while the second alleged the same offense with intent to shirk important service, namely, assignment as a replacement overseas. Accused pleaded not guilty to those offenses but he was found guilty of the offense alleged in the first specification. He was sentenced to receive a bad-conduct discharge, to forfeit $75.00 per month for twelve months, to be confined at hard labor for one year, and to be reduced to the grade of private. The convening authority approved the findings and sentence, but a board of review in the office of The Judge Advocate General of the Navy, holding that the five exhibits by which the prosecution proved its case were not properly received in evidence, set aside the finding of guilty as to the first specification of Charge II and ordered that charge dismissed. Because of the elimination of the one finding, it reduced the forfeitures and confinement to a period of six months. The Judge Advocate General certified the record to this Court requesting that we determine the correctness of the board's decision.

The evidence presented by the prosecution consists of five entries or supporting documents shown  in or attached to the current service record of the accused. To understand properly the question in issue, it is necessary to keep in mind that the entries offered were part and parcel of the accused's service

**349**

record and the exhibits attached to the record of trial are certified as being true copies of the originals. Exhibit 1 is a copy, certified as true, of special orders directing that the accused report to the Commanding General at Camp Pendleton not later than midnight, February 25, 1953. By a signature appearing thereon, accused admitted receipt of the orders. Exhibit 2 is a certified true copy of a telegram from the accused to the Commanding General, dated February 23, 1953, requesting fifteen days' leave for the purpose of getting married. Exhibit 3, again certified as a true copy, is a reply telegram to the accused granting him a ten-day extension which would expire on March 7, 1953. Exhibit 4 is an extract copy of an entry from accused's service record showing that he failed to report in compliance with orders and was on unauthorized absence from one o'clock a.m. March 8, 1953. Exhibit 5 is another extract entry from his service record which shows that he was apprehended by agents of the Federal Bureau of Investigation on July 7, 1953, and that his absence without leave status changed on that date. The latter two exhibits show service record entries which have been certified properly as being true. All of the above enumerated exhibits were presented to the court-martial and admitted into evidence by a well-known and acceptable method of establishing facts. The same procedure was used in all instances, so we need quote only one colloquy to illustrate the manner in which the evidence was admitted:

"TRIAL COUNSEL: The prosecution offers in evidence a Special Order from the Marine Corps Forwarding Depot, Portsmouth, Virginia, dated 15 January 1953 which is in the current service record of the accused. It is offered to the defense for inspection and possible objection with the request that a true copy be substituted for the record. This exhibit which is offered is a true copy appearing in the current service record of the accused.

"DEFENSE COUNSEL: No objection.

"LAW OFFICER: A true copy of a special order in the current service record of the accused dated 15 January 1953 will be received in evidence as Prosecution Exhibit 1, and a true copy may be substituted therefor. The trial counsel read Prosecution Exhibit 1."

The board of review held that the exhibits were not properly received in evidence because trial counsel was not sworn as a witness at the time he read the contents to the court-martial. (See Article 42(b), Uniform Code of Military Justice, 50 USC § 617.) In its decision, the board stated:

"A close examination of the quoted part of the record will reveal that, whereas the documents could have stood for themselves to be self-authenticative if they had been properly admitted in evidence, in this case the court had no means of determining this fact for themselves. According to the record (by which we are bound) the court did not see the documents but rather heard the trial counsel read their contents. In other words, it was not the documents themselves which were speaking, but rather the voice of the trial counsel. While the trial counsel had 'offered' the documents in evidence and the law officer had announced that they would be so received, there is no showing that they were duly received. In effect what happened was that the trial counsel testified as to their content and this testimony was not under oath or affirmation as required by the Code and the Manual."

Because the procedure followed in this case met the minimal standards to qualify the exhibits for admission into evidence, place them before the court-martial members for their consideration, and incorporate them properly within the record on appeal, we disagree with the conclusion reached by the board of review. No issue was raised as to the authenticity of the service record or of the documents and the entries taken therefrom. Furthermore, we believe it is substituting form for substance to hold that because the law officer announced the exhibit "will be received in evidence" there remained some further act on his part to com-

plete the entry. Apparently the originals were produced by trial counsel, shown to defense counsel for inspection and possible objection, and a request made that copies be substituted. The originals of official documents are seldom left as part of the records and files in a case, and good practice permits true copies to be substituted therefor. No objection was lodged by defense counsel to either the entries or the substituted copies, and the law officer admitted the originals and directed that true copies be included in the record of trial in lieu of the originals. Certified copies of all the exhibits were substituted and are now part of the record of trial. This is in accordance with proper and generally accepted procedure for the presentation and receipt of documentary evidence. We have previously so held. In United States v. Castillo, 1 USCMA 352, 3 CMR 86, where a similar contention was advanced, we stated:

"Despite the previous practice obtaining in Naval court-martial administration under the Articles for the Government of the Navy, 34 USC § 1200, and Naval Courts and Boards, 1937, it appears that the passage above quoted from the Manual for Courts-Martial, supra, contains no requirement that the trial counsel be sworn testimonially at the time he presents evidence of previous convictions. Moreover, we are aware of no provision of the Uniform Code of Military Justice, or other language of the Manual established thereunder, setting up such a requirement—and our attention has been directed to none through diligence of counsel. The general subject of proof of prior convictions was considered by us not long since in United States v. Carter (No. 159), 1 USCMA 108, 2 CMR 14, decided January 18, 1952. We certainly implied there, as we hold here, that no fixed method for the introduction of evidence in such a situation has been provided by authoritative directives, and certainly that the sworn testimony of the trial counsel is not demanded either as a primary source of proof, or as .a necessary predicate to documentary

evidence. In the Carter case, in fact, we said that:

'Evidence [including evidence of previous convictions] may be presented to a court in various ways. These consist of the testimony of sworn witnesses, by stipulations, by admissions in open court, by written instruments, and perhaps by other methods.' "

We cannot adopt the argument, sought to be advanced, that the present case is distinguishable from the Castillo case, supra, because it involves a pre-finding as opposed to a post-finding error. In either event, if the evidence was improperly received, there is error which works to the prejudice of the accused. Neither are we impressed with the assertion that the record contains no evidence but the unsworn statements of trial counsel. Of course, defending counsel can require the custodian of a record to establish its identity under oath, but he need not do so. If he is satisfied that the document handed him is a relevant part of accused's service record, he is not required to make an issue as to that matter. Here he elected not to do so and we are not disposed to require trial counsel to perform a ministerial act unless demanded by opposing counsel. Once the documentary evidence is received in evidence, its contents are before the court-martial whether read by trial counsel or defense counsel, or not read. Because it may expedite the transmission of the contents of a document to court-martial members by having it read by counsel, and that method is adopted, does not change the rule that a document speaks for itself. Once it is admitted in evidence, anyone participating in the trial can read it. In this instance, the written exhibits support the finding and they would be adequate with or without comments by trial counsel. We are convinced, therefore, that the Castillo ruling is dispositive of the instant case. Accordingly, it is our opinion that the action of the board of review in setting aside the findings of guilty to Charge II are incorrect.

There is one further matter touched

on in the decision of the board of review which bears discussion. In  the opinion it is stated that the accused was convicted "without one iota of acceptable testimony having been heard against him." Either the board members intended to limit that statement to prosecution evidence or they overlooked a most important part of the record. The transcript reveals that the accused took the witness stand and testified in his own behalf. By his testimony, which we understand to be acceptable, he related all of the facts and circumstances proved by the exhibits. He left only one element in issue, namely, the intent with which he went and remained absent from his station. He stated that he had received orders to go to Camp Pendleton, and that he was given seven days delay en route. He went to New York City to visit his family. During this visit he decided to get married and dispatched a telegram to the Commanding General, Marine Barracks, Camp Pendleton, requesting a fifteen-day extension of leave. He was granted ten days, but his plans to get married were abandoned because of his mother's health and her resulting financial difficulties. He stayed at home because she needed his assistance and he worked at intervals for people in New York. During this time he did not attempt to make any further contact with his military superiors. He further testified as to his apprehension by the Federal Bureau of Investigation agents on his 129th day of absence, stating that he had been planning to return to his unit the day after he was apprehended. From our recitation of his testimony, it is apparent that every element, except that of intent, was judicially admitted by the accused, and in all instances his testimony corroborated the truth of the facts shown by the prosecution's documents. Little more need be said.

From what has been said, it follows that the decision of the board of review should be, and it is, reversed. The record is returned to The Judge Advocate General of the Navy for such action as is consistent herewith.

Chief Judge QUINN and Judge BROSMAN concur.