UNITED STATES, Appellee

v.

JOHN E. CIRELLI, Private, U. S. Army, Appellant

1 USCMA 568, 4 CMR 160

No. 304

Decided August 8, 1952

Thomas Z. Minehart, Esq., and LT. COL. George E. Mickel, USA, for Appellant.

LT. COL. Thayer Chapman, USA, 1ST LT. Eugene L. Grimm, USA, and 1ST LT. Kenneth A. Howard, USA, for Appellee.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

This case is before us on petition for review granted February 21, 1952, pursuant to the provisions of the Uniform Code of Military Justice, Article 67(b)(3), 50 USC § 654. Petitioner was charged with desertion with intent to remain away permanently, in violation of Article of War 58, 10 USC § 1530; and unlawful possession of narcotics, in violation of Article of War 96, 10 USC § 1568. The specification of the first charge alleged that petitioner deserted the service of the United States at Ascom City, Korea, on or about December 1, 1950, and remained in desertion until he was apprehended at Taegu, Korea, on or about February 10, 1951. The specification of the second charge alleged that petitioner had in his possession at Taegu, Korea, on or about February 10, 1951, approximately .035 grams of morphine, a habit-forming drug, not having been ordered by a medical officer of the Army. Petitioner was arraigned on May 28, 1951, and tried by general court-martial on June 15, 1951, at Pusan, Korea. The accused pleaded not guilty to all charges and specifications but was found guilty as charged. He was sentenced to dishonorable discharge, total forfeitures, and confinement at hard labor for 15

years. The convening authority reduced the period of confinement to 10 years, but otherwise approved. The approved findings and sentence were affirmed without opinion by a board of review in the office of The Judge Advocate General, United States Army. The order granting accused's petition limited briefs and argument to the issue of whether the evidence was sufficient as a matter of law to sustain the findings of guilty of desertion.

The record discloses that sometime during November 1950, the accused, whose unit was then located in Ascom City, Korea, was sent to the Fourth Field Hospital located in the same city. On November 30, 1950, orders were issued by the Fourth Field Hospital directing the accused to return to his unit on December 1, 1950. The accused was not again seen in his organization after leaving it to go to the hospital. Master Sergeant Anthony J. Gill, the accused's superior noncommissioned officer, testified that he did not see accused in the organization after transfer to the Fourth Field Hospital, and that, if the latter had returned, he, Gill, would have been in a position to know of Cirelli's presence. This witness further testified that the accused's unit left Ascom City on or about December 22, 1950, but that the accused was not present at the time of departure. Petitioner was apprehended at Taegu on February 10, 1951, by military police and agents of the Criminal Investigation Detachment. At the time of his apprehension petitioner was asleep alone in a room of a private Korean dwelling house in Taegu. At the side of his bed agents of the Criminal Investigation Detachment, and of the American and Korean military police, found a small paper packet containing a whitish powder, together with a hypodermic syringe and two hypodermic needles. The contents of this packet were subsequently subjected to chemical analysis and determined to consist of .035 grams of a morphine compound.

Subsequent to his apprehension, petitioner's organization received a copy of orders affecting him issued by the Fourth Field Hospital, and as a result made appropriate entries in the morning report of the unit showing his status as an absentee without leave as of December 1, 1950. Likewise his return to military control on February 10, 1951, was entered. Two duly authenticated extract copies of morning reports of the accused's organization reflecting the above information were received in evidence without objection by defense counsel, and served to establish prima facie that petitioner was absent without leave from his unit from December 1, 1950, until February 10, 1951, a period of 71 days. The accused did not take the stand on the merits of the case.

After his apprehension the accused was taken to the office of the 51st Criminal Investigation Division in Taegu, where he was warned of his rights under the 24th Article of War, 10 USC § 1495. He thereupon made an oral statement to two agents of the Division. On the afternoon of the same day, having again been warned of his rights, petitioner made a further statement, which was reduced to writing and which the accused signed. From these two statements it appears that the accused admitted that he had been absent without leave from his organization for the period alleged, that he absented himself without authority at Ascom City, that he remained for a time in the Kaesong area, and that he went to Taegu in January 1951. He further stated that he spent some time looking for his unit, was unable to find it, and "just stayed around Taegu doing nothing." Petitioner further admitted that he had used narcotics for about two months, that he had sought to cure himself of his addiction, that he had succeeded well enough to require no further help, and that he had taken an injection of morphine on the night before the morning of his apprehension. The accused also stated that he had intended to surrender himself on the day he was apprehended. Apart from this last statement, petitioner said nothing in explanation of his absence. We observe that, although the record discloses that petitioner used narcotics during his unauthorized absence, there is no showing that he was under their effect continuously during this time. In addition, we note that it was not urged at the time of trial, nor is it now contended, that he was unable to return to his

organization from want of physical ability resulting from the use of drugs.

It is obvious that the documentary evidence adduced by the prosecution, the testimony of Sergeant ▮▮▮▮ ▮ Gill, and the pre-trial statements of the accused, were more than sufficient to establish his unauthorized absence from December 1, 1950, to February 10, 1951. Accordingly, the only question of concern to us is whether the evidence contained in the record is sufficient to sustain as a matter of law the finding of an intent to desert. As we said in this same connection in United States v. Ferretti (No. 213), 1 USCMA 323, 3 CMR 57, decided April 18, 1952, a Navy case dealing with a similiar problem:

> "In this case, as in United States v. Peterson, 1 USCMA 317, decided April 17, 1952, the record reveals compelling and uncontroverted evidence to establish the element of unauthorized absence. Accordingly, the only question presented on this appeal is whether the evidence reflected in the record was sufficient to sustain the finding by the triers of fact of an intention to desert. It is a familiar observation that intent, being a state of mind, is rarely the subject of direct proof, but ordinarily must be inferred from circumstances. See Naval Courts and Boards (1937), § 76. *Our inquiry, then, becomes one of whether the complex of evidence in this case permitted a determination, beyond a reasonable doubt and within the fair operation of reasonable minds, that the accused, at the inception of, or at some time during his unauthorized absence, possessed the intention permanently to abandon the naval service. . . ."* [Emphasis supplied]

We have reviewed with care the record of trial for the limited purpose of testing for sufficiency, and have fully studied briefs of counsel. We can come to no conclusion other than that the evidence was legally sufficient to meet the standard set out in the quoted paragraph. In previous decisions we have announced the principles which serve to guide us in testing for sufficiency. See United States v. Peterson (No.

199), 1 USCMA 317, 3 CMR 51, decided April 17, 1952; United States v. Ferretti, supra; United States v. O'Neal (No. 25), 1 USCMA 138, 2 CMR 44, decided February 7, 1952; United States v. Shull (No. 45), 1 USCMA 177, 2 CMR 83, decided February 18, 1952; United States v. McCrary (No 4), 1 USCMA 1, 1 CMR 1, decided November 8, 1951. In these opinions we have made our position on this question abundantly clear, and do not believe it necessary to repeat their doctrine at this time.

It need hardly be stated that proof of desertion of the nature here alleged requires only the establishment of absence without leave accompanied by an intention not to return. Manual for Courts-Martial, US Army, 1949, paragraph 146a. It is also too well settled to require citation of authority that if the period of unauthorized ▮▮▮▮▮ ▮ absence is much prolonged and there is no satisfactory explanation of it, then the court-martial may be justified in inferring from that alone an intention to remain away permanently. The 1949 Manual at page 199 provides, in pertinent part, that:

> ". . . . The inference may be drawn from evidence proving that the accused . . . was arrested or surrendered at a considerable distance from his station; while absent he was in the neighborhood of military posts and did not surrender to the military authorities; he was dissatisfied in his company or with the military service; . . . . On the other hand, evidence . . . that he was under the influence of intoxicating liquor or drugs when he absented himself and that he continued for some time under their influence, and similar evidence may be regarded as a basis for a contrary inference. Although the accused may testify that he intended to return, such testimony is not compelling, as the court may believe or reject the testimony of any witness in whole or in part. . . . ."

Against this background, we must now consider briefly the evidence found in each pan of the scales. As supporting the existence of an intention not to return to the military service, we enum-

**571**

erate the following compelling factors: (a) The duration of the accused's absence at a time when and a place where his services were badly needed. (b) The fact that he was apprehended, and had wholly failed to surrender himself, despite the presence of numerous nearby military establishments. (c) The situation of the point of apprehension in a city some 200 miles from the situs of his organization, at the time he left it, and some hundred miles from its later location.

Appellate defense counsel suggests, however, that since the entire case for the Government is circumstantial in character, the evidence must point unerringly to the guilt of the accused. The position of the defense is that the necessary intent may not be inferred from length of absence alone, where other circumstances negative its presence, or explain in some degree the accused's absence. It is urged that the following principal circumstances should be considered on petitioner's side of the balances: (a) Petitioner's admission to being absent without leave and his expressed intention to return to duty. (b) The confused and fluid military situation in the area at that time. (c) Petitioner's addiction to narcotics. (d) The fact that the accused was an Occidental person in an Oriental country. (e) The accused's youth and length of service in the Orient. (f) The accused's cooperative actions after apprehension.

From among the factors suggested by counsel, we shall discuss only those we believe to possess some ▉▉▉▉▉ ▇ touch of merit as bearing on the issue of intent. The first of these—offered as mitigating against an inference of intent to desert —is the statement made by the accused at the time of apprehension that he intended to turn himself in on that very day. We are not persuaded that this circumstance should necessarily have had effect in rebutting the inference of an intent to remain away permanently. It was merely an item of evidence, which, like any other, was susceptible of acceptance or rejection by the fact finder. Apparently the members of the court-martial determined to disbelieve it, or else they did not regard it of sufficient probative value—weighed with the remainder of the evidence pro and con—to swing the balance in petitioner's favor. We cannot say that the court's action in this respect was improper, arbitrary, contrary to reason, or that it constituted an abuse of sound discretion. In this connection, as suggested by appellate Government counsel, the fact that the accused was found asleep in a Korean house on the morning of his apprehension, with a supply of narcotics at his side, may properly have led the court to give little credence to his claim. We note that the 1949 Manual specifically provides that testimony by an accused that he intended to return to military control is not compelling, since the court may properly believe or reject the testimony of any witness in whole or in part. Manual for Courts-Martial, US Army, 1949, paragraph 146a. Additionally, even had petitioner in fact returned to his unit, this would not necessarily foreclose a finding of guilty of the offense of desertion. The Manual, supra, in this connection provides that, "A prompt repentance and return, while material in extenuation, is no defense." Although dealing with testimony of an accused, and not with a pre-trial statement, the following language from United States v. Ferretti, supra, seems not inappropriate in the present connection:

"While the accused denied categorically that he entertained for any moment of time an intention to abandon the service permanently, it does not follow that the members of the court-martial were bound to accept this protestation as conclusive proof, or even as evidence strongly tending to exculpate petitioner. Both the court-martial and the board of review, acting reasonably, were fully authorized to weigh this assertion of Ferretti, together with the remainder of his testimony and, as well, with all other developed facts and proper inferences concerning his absence— this for the purpose of evaluating his credibility on the point in light of the entire evidential picture. Moreover, the triers of fact were permitted to take into account, in weighing his testimony and determining its credit, the deep personal interest

which an accused person in a criminal case has in its outcome. See *United States v. Kenney*, 90 Fed. 257, 268; Wharton, Criminal Evidence, 11th ed, § 1418. To put the matter somewhat differently, the court-martial's members were permitted to judge the inherent probability or improbability of petitioner's protestations, and to consider to what extent, if any, his testimony in this respect had been corroborated or controverted by other evidence in the cause from any source. . . . ."

A further circumstance which is said to rebut the inference of an intention on petitioner's part not to return is the fact that accused had been addicted to the use of narcotics. While it is true that addiction to drugs *may* be regarded as basis for an inference that the accused did not entertain the necessary intent, this, again, is a factor which the court was entitled to weigh, along with all other evidence in the case, in arriving at its findings. See Manual for Courts-Martial, US Army, 1949, paragraph 146a, and Dig Op JAG, Army, 1912–40, pp 267–268. Moreover, as we observed earlier, there was no affirmative showing that petitioner was under the effect of drugs continuously or even regularly, during his absence. Instead, it appears from his pre-trial statement that in January 1951 he went to Taegu and searched for his unit for some two weeks. In view of the evidence in the record in support of a finding of intention to desert, we cannot say that the court improperly disregarded this, or other possible elements of defensive evidence, as a basis for a contrary inference.

Appellate defense counsel contends that several further factors argue against an intention to desert, but operate instead to show a mere temporary absence without leave purpose based on acute discontent. These items are enumerated by counsel as (1) The accused's youth. (2) The fact that he had served beyond his three-year enlistment. (3) The fact that this additional service was involuntary. (4) The fact that all of the accused's enlistment period had been spent in the Orient and outside the continental limits of the United States. We are of opinion that these factors have little or no bearing on the issue of the accused's guilt or innocence of the offense charged, but are matters in extenuation only. As to the matter of discontent, on the other hand, the Manual for Courts-Martial, supra, paragraph 146a, specifically provides that the intent to desert may be inferred from evidence showing, inter alia, that the accused was dissatisfied with his assignment, or with the military service.

Under the facts and circumstances of this case we find no merit in the remaining matters which have been urged as circumstances negating an intention to desert, or explaining the accused's absence. To hold conversely would require that we set aside numerous otherwise valid convictions of desertion occurring in or near active combat areas and especially at the present time in the Far East. With respect to the several factors urged as evidence tending to rebut the inference of intent to desert, the following passage from *United States v. Peterson*, supra, seems pertinent:

"It must be obvious that by this reference we are not to be understood as holding, or even remotely suggesting, that the explanatory testimony of an accused person—*or other similar element of defensive evidence—will necessarily* avoid in any case reasonable inferences arising from operative facts proposed or established by the prosecution. Not at all. This factor, together with its cargo of informational content, constitutes merely one item to be considered with, and in light of, all other evidence in the case in reaching a conclusion as to sufficiency. . . ." [Emphasis supplied]

It is clear from what has been said that we find the evidence legally sufficient to sustain the findings of guilty of desertion. This action is based on our conviction that the complex of evidence in this case permitted a determination, beyond a reasonable doubt and within the fair operation of reasonable minds, that the accused, at the inception of, or at some time during, his unauthorized absence, possessed the intention permanently to remain away from his

**573**

place of service. It follows that the decision of the board of review is affirmed.

Chief Judge QUINN and Judge LATIMER concur.