UNITED STATES, Appellee

v.

RICHARD LEONARD PETERSON, Corporal,
U. S. Marine Corps, Appellant

1 USCMA 317, 3 CMR 51

No. 199

Decided April 17, 1952

CDR. Malcom J. Bradbury, USN, for Appellant.
LTJG. Robert Emmet Dunne, USN, for Appellee.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

This accused was tried by general court-martial convened at Marine Barracks, Camp Lejeune, North Carolina, on May 14, 1951, under a specification alleging in substance an absence without leave from February 6, 1951, until February 10, 1951, and a further one alleging desertion from February 16, 1951, until termination by surrender on April 4, 1951. He pleaded guilty to the first charge and specification but not guilty to the second. He was found guilty of both offenses, and sentenced to be dishonorably discharged, to be confined at hard labor for 2 years, to be reduced to the grade of private, and to suffer other punitive accessories prescribed by Naval Courts and Boards, Section 622 (1937). The convening authority reduced the period of confinement with related accessories to 20

318

months, substituted a bad-conduct discharge for the dishonorable discharge imposed by the court-martial, but otherwise approved. A board of review in the office of The Judge Advocate General, United States Navy, affirmed. The case comes before us on timely petition for review granted on December 17, 1951, pursuant to the provisions of the Uniform Code of Military Justice, Article 67 (b) (3), 50 USC § 654. In granting the accused's petition, this Court limited argument to the issue of sufficiency of evidence to support findings of guilty of desertion. In view of this fact, and because the accused pleaded guilty to the first specification and charge, we are concerned here only with proof of the offense of desertion.

For the purpose of establishing the inception of the period of unauthorized absence alleged in the language specifying the offense under consideration, the Government offered in evidence an appropriate extract from petitioner's service record. Also received in evidence was a copy of stragglers orders issued to the accused, Peterson, directing him to report to Camp Lejeune not later than 10 o'clock P.M., February 16, 1951. A third item of evidence introduced by the prosecution consisted of a stragglers report reflecting the time and manner of termination at Camp Lejeune of the absence alleged. The Government then rested.

The accused was duly sworn as a witness in his own behalf and testified at length concerning his actions and motives in the premises. The facts which follow were elicited principally on direct and cross-examination of this witness. It appears that petitioner was granted leave of absence from his station at Camp Lejeune, which leave expired on February 6, 1951. News of the death of his brother in Korea had recently been received; his parents in Michigan had been "pretty well broken up" on receipt of this information; and he wished to visit his home for the purpose of comforting them. Petitioner remained at home for a period of 4 days beyond the expiration of this leave, and thereafter surrendered himself at the United States Naval Reserve Training Center, Kalamazoo, Michigan. On February 15, 1951, at Great Lakes, Illinois, he was given the stragglers orders mentioned in the preceding paragraph. Thereafter he proceeded under these orders to Washington, D. C., arriving there "about noon" on February 16, 1951. At that time and place he determined to return to Michigan. In speaking of his reason for this decision the accused used the following language:

". . . the way I left Kalamazoo when I turned in the first time I was locked up for four days in the county jail and I didn't get a chance to see them [his parents] before I left, and so when I got down as far as Washington and I started thinking about it and I thought I would go home for a few more days."

When asked on direct examination if he intended to return to his station at Camp Lejeune at all times during the period of his unauthorized absence, he answered in the affirmative. Following his return from Washington to his parents' home in Michigan—his own home of record as well—petitioner remained there in an absence without leave status for 46 days. On return to his base on April 4, 1951, he was attired in civilian clothing, but carried his military clothing in luggage. He had retained possession of his service identification card. During his unauthorized stay at home, which was located on "a pretty good size farm," he wore his dungarees, he said, and assisted his father about the place, although he did not work continuously, nor did he engage in or seek additional employment. He stated that he did not take steps to notify Corps authorities of his whereabouts because "I mainly figured that they would pick me up and take me back right away." When asked by the judge advocate on cross-examination if he did not "want to, actually want to quit the Marine Corps at that time," he replied in the negative. When questioned concerning his motive in surrendering finally at his duty station, he responded, "I knew I had to come back some time or other and I just got to thinking it over, and I decided to come back."

**319**

The case at bar was tried under the older procedural dispensation and the provisions of Naval Courts ■ and Boards (1937) which latter reflect that the offense charged consists of an unauthorized absence accompanied by an intention permanently to abandon the naval service. The documentary evidence adduced by the prosecution was ample to establish the initial element, leaving only the issue of intent. The record discloses that at the time the accused received stragglers orders on February 15, 1951, he certified thereon his understanding that failure to comply therewith would subject him to a charge of deliberate disobedience of orders. Therefore, in support of the Government's contention that petitioner intended permanently to abandon the naval service we find an unauthorized absence of 46 days, raising certainly some inference in this direction, plus the presence of a threat of disciplinary action for the earlier four-day overleave, together with a further similar possibility growing out of his breach of the stragglers orders of February 15. On the other hand and pointing contrariwise is the accused's full and circumstantial explanation of his conduct and motives, as corroborated by his surrender at his duty station and the circumstances surrounding this action. It is to be observed, of course, that his testimony was wholly uncontradicted and that it was not inherently improbable.

It is evident that the findings of guilty in the instant case were supported by some evidence. However, this without more is insufficient. In United States v. O'Neal (No. 25) 1 USCMA 138, 2 CMR 44, decided February 7, 1952, we used the following language:

"Certainly the findings of guilty in the case at bar were supported by some evidence. It is difficult to conceive of a case which has run the gauntlet of pre-trial protective devices and reached the stage of trial by military court-martial in which there is no shred of evidence of guilt. But this is not enough. In addition, the evidence necessary for the con-

320

viction's survival must be substantial. But even this is not enough, if by the term is meant but barely more than some—i.e., a scintilla—and meant as well that substantiality is necessarily to be discerned by observation through spectacles directed at only one presentation of the controversy. Of course, a court in the position occupied by us at present should look largely at the case for the Government, but it is not required to ignore completely the bipartite nature of the judicial transaction, and, indeed, is permitted to take into account in a proper case other elements of the evidential structure, and to arrive at a conclusion as to sufficiency in these terms."

Among other well-established principles which serve to guide us in testing for sufficiency is that ■ suggesting that suspicion, conjecture, and speculation cannot form the basis for fact-finding action. The entire complex of evidence before the court must be legally sufficient in order to sustain findings of guilty. That is to say—in a case like the present one—the testimony and other evidence before the triers of fact must be such as to permit a determination that the accused possessed the requisite intent—that is, that he intended permanently to abandon the naval service—beyond a reasonable doubt and within the fair operation of reasonable minds. United States v. O'Neal, supra; United States v. Shull (No 45) 1 USCMA 177, 2 CMR 83, decided February 18, 1952. See also United States v. McCrary (No. 4) 1 USCMA 1, 1 CMR 1, decided November 8, 1951.

In the present instance we are faced with a problem frequently, if not usually, arising in cases of alleged desertion. In such a situation a clear showing of unauthorized absence is typically present through the routine presentation of extract copies of official military records—leaving as the only controverted question the sufficiency of the evidence to support the finding of an intention to remain away permanently, to avoid hazardous duty, or to

shirk important service, as the case may be. It is in this area that the presence or absence of facts—or perhaps even of a single fact—may lead to divergent results. Accordingly, in this case, as elsewhere, it is our duty carefully to review the evidence for the limited purpose of determining legal sufficiency. Before doing so, however, it is well to bear in mind certain applicable provisions of Naval Courts and Boards. Section 76 provides, inter alia, that:

"Intent being a state of mind is not subject to direct proof, but is a presumption of fact to be inferred from other facts.

. . . . . . .

"The absence when proved . . . if not satisfactorily explained . . . establishes a prima facie case.

"A prima facie case is that amount of evidence which would be sufficient to counterbalance the general presumption of innocence, and warrant a conviction if not encountered and controlled by evidence tending to contradict it and render it improbable, or to prove other facts inconsistent with it."

Inasmuch as the definition of the present variety of desertion provided by the Manual for Courts-Martial, U. S. Army, 1949, is, for the instant purpose, substantially the same as that set out in Naval Courts and Boards, reference to the discussion of this offense in the 1949 Manual is not out of order. Certain pertinent provisions of paragraph 146a thereof are set out below:

"Unless, however, an intent not to return to his place of duty exists at the inception of, or at some time during, the absence the soldier cannot be a deserter, *whether his purpose is to stay away a definite or an indefinite length of time.*" (Italics supplied)

With respect to the element of intent, the same paragraph provides that:

"If the condition of absence without leave is much prolonged and there is no satisfactory explanation of it, the court will be justified in inferring from that alone an intent to remain absent permanently. . . . The inference may be drawn from evidence proving that the accused attempted to dispose of his uniform or other military property; his civilian clothes were missing; he purchased a ticket for a distant point or was arrested or surrendered at a considerable distance from his station; . . ."

Against a background of the principles set out in the foregoing quotations, and on the basis of the facts of the case at bar elaborated in an earlier section of this opinion, we are asked to conclude that the finding of an intention on the part of Peterson permanently to abandon the naval service is predicated on legally sufficient evidence. We cannot do this at all. In fact we explicitly adhere to the converse of this proposition; that is, we hold that the present finding is unsupported by sufficient evidence. Without reviewing in detail the evidence fully reported elsewhere herein, it may be said that a prominent factor in our thinking on this subject is the uncontradicted and not inherently improbable account given by the accused of his conduct and motives in the premises. In this respect, as well as in others, the case at bar is clearly distinguishable from United States v. McCrary, supra, relied on by appellate Government counsel. In the McCrary opinion we spoke as follows:

"With his reasons for absence unexplained a fair-minded person weighing the facts would not be unreasonable in concluding that accused was seeking to avoid overseas shipment and that his intent in leaving was to escape permanently from any such fate.

. . . . . . .

"However, there are reasonable inferences which members of a court-martial may draw from those facts which are established beyond a reasonable doubt and if the accused is to escape the consequences of those inferences there must be some evidence in the record which makes the in-

ference unreasonable or irrational. . . . This rule does not require the accused to testify in his own behalf. It merely affords him the choice of explaining what might be incriminating circumstances or allowing the court-martial to make reasonable inferences from his unexplained and out of the ordinary conduct."

It must be obvious that by this reference we are not to be understood as holding, or even remotely ■ suggesting, that the explanatory testimony of an accused person—or other similar element of defensive evidence—will necessarily avoid in any case reasonable inferences arising from operative facts proposed or established by the prosecution. Not at all. This factor, together with its cargo of informational content, constitutes merely one item to be considered with, and in light of, all other evidence in the case in reaching a conclusion as to sufficiency. In this connection, however, reference is made to the following language used by us in United States v. O'Neal, supra:

"Thus we cannot accept the findings in the instant case as reflecting a conclusion based solely on disputed facts; and *along with the undisputed facts we must weigh O'Neal's uncontradicted and not inherently improbable testimony.*" (Italics supplied)

It is our purpose to apply to the facts of the present case the yardstick provided by this Court in United States v. O'Neal, supra. In doing this, and after viewing the record from every aspect of the evidential structure, we are firmly convinced that reasonable men must be in accord in holding that rational hypothesis other than that the accused, Peterson, intended permanently to abandon the naval service may be drawn from the evidence. At most—and within the fair operation of a reasonable mind—the evidence is as consistent with innocence as with guilt. It follows that the findings of guilty of desertion must be set aside as based on insufficient evidence. As we said in United States v. Shull, supra:

"This action is predicated on the position that the evidence before the court-martial did not permit a determination of the possession of such an intent on the part of the accused beyond a reasonable doubt and within the fair operation of reasonable minds."

Appellate Government counsel addressed himself to the problem of the meaning of the phrase ■ "much prolonged absence," frequently used in cases like the present one, and to the attitude of this Court, as expressed in previous decisions, toward the question of sufficiency of evidence in desertion cases. In doing so he warned the Court of the necessity—unless its approach be modified—for an eventual and highly specific evaluation of the phrase under discussion. Conceding arguendo the undesirability of such a result, we are not disturbed by the prospect of risk. Rarely, if ever, will the period of unauthorized absence in a desertion case be unaccompanied by other evidential factors. Each sufficiency case rests on its own bottom, and each will be considered individually by this Court.

The documentary evidence in this case, and the testimony of the accused, are ample to establish an unauthorized absence of 46 days. Accordingly, the case is remanded to The Judge Advocate General, United States Navy, for such corrective action as may be necessary.

Chief Judge QUINN concurs.

GEORGE W. LATIMER, Judge: (concurring in the result)

I concur in the result.

My dissent in United States v. O'Neal (No 25) 1 USCMA 138, 2 CMR 44, 55, decided February 7, 1952, explains in part why I do not concur outright. Intent is a state of mind. It must necessarily be established by circumstantial evidence, and I would apply the legal principle which fits that type of evidence; that is, if the facts and circumstances do not, as a matter of law, permit the members of the court-martial to draw an inference of intent on the part of the accused to abandon the service permanently, then the conviction cannot be affirmed.

The only evidence to furnish a predicate for that inference was the length of absence and the distance from the unit. The Court's opinion quotes a Navy regulation which, in substance, is that if the absence without leave is much prolonged and there is no satisfactory explanation of it the court-martial will be justified in inferring an intent to remain absent permanently. The inference suggested by that regulation is based on prolonged and unexplained absence. Here, the accused assumed the burden to explain his absence, and every fact and circumstance disclosed by the record, save the length of the absence, lend credence to his explanation. The death of his brother created a situation he felt required his return home on leave. He stayed at home except when returning to the station. Twice in the period of some 55 days he voluntarily returned to the service. He did not conceal his identity. He did not dispose of his military paraphernalia. He indicated an intent to make the service his career as he had served 4 years in the Marine Corps and approximately 2 months prior to the first absence he had re-enlisted for 6 years. He had expressed no dissatisfaction with his unit or with the service. Substantial indicia of intent to return are present. While, as previously stated, unexplained absence may be a base for an inference of intent not to return, explanation which reasonable men must conclude was satisfactory demolishes both the base and the inference.

The distance accused travelled away from the station is of little importance in this case, as he was authorized to go to his home in Michigan on leave. After overstaying his leave he surrendered in Michigan, started the return journey to his unit, reached Washington, D. C., and again returned to his home. He terminated his second absence by travelling from Michigan to Camp Lejeune, North Carolina, and reported in at his home station. Such distances as he travelled between these various points lend support to an inference of intent to return to the service.

In my judgment, the decision of the board of review must be reversed because the finding of guilty is based on an inference drawn by the court-martial which is wholly unsupported by any evidence.