UNITED STATES, Appellee

v.

ORRIN LOUIS FERRETTI, Private First Class,
U. S. Marine Corps, Appellant

1 USCMA 323, 3 CMR 57

No. 213
Decided April 18, 1952

 

LT. Henry B. Nesbitt, USNR, for Appellant.
LTJG. Robert Emmet Dunne, USNR, for Appellee.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

This case comes before us on petition for review granted December 18, 1951, pursuant to the provisions of the Uniform Code of Military Justice, Article 67 (b) (3), 50 USC § 654. On May 28, 1951, the accused, Ferretti, a member of the United States Marine Corps, was tried by general court-martial convened at the United States Naval Base, Charleston, South Carolina, on a charge of desertion in violation of Article 8, paragraph 21, Articles for the Government of the Navy, 34 USC § 1200. The specification alleged that the accused, while serving at Camp Lejeune, North Carolina, deserted from his company and from the naval service of the United States on or about January 3, 1951, and remained in desertion until he was delivered to naval authorities at the United States Naval Air Station, Miami, Florida, on or about February 20, 1951. The accused pleaded not guilty. He was found guilty and sentenced to be reduced to the rank of private, to be confined for a period of 18 months, to be dishonorably discharged, and to suffer other accessories prescribed by § 622, Naval Courts and Boards (1937). The convening authority reduced the period of confinement with corresponding accessories to 12 months, but otherwise approved. A board of review in the office of The Judge Advocate General, United States Navy, affirmed the approved findings and sentence. The order granting accused's petition limited briefs and argument to the issue of whether the evidence was sufficient to sustain the findings of guilty.

According to the provisions of Naval Courts and Boards (1937), § 76, under which the accused was tried, desertion consists of an unauthorized absence accompanied by an intent permanently to abandon the naval service. The inception of the period of unauthorized absence was established here through the service record of the accused, which the judge advocate offered in evidence without objection, and from which he read certain extracts pertaining to the offense with which the accused was charged. The first extract disclosed that petitioner on January 3, 1951, absented himself without authority after expiration of leave. A further extract was employed to establish the time and manner of termination of the absence as alleged in the specification. Having thus shown a 48-day period of unauthorized absence the prosecution rested.

In this case, as in United States v. Peterson (No 199) 1 USCMA 317, 3 CMR 51, decided April 17, 1952, the record reveals compelling and uncontroverted evidence to establish the element of unauthorized absence. Accordingly, the only question presented on this appeal is whether the evidence

reflected in the record was sufficient to sustain the finding by the triers of fact of an intention to desert. It is a familiar observation that intent, being a state of mind, is rarely the subject of direct proof, but ordinarily must be inferred from circumstances. See Naval Courts and Boards (1937), § 76. Our inquiry, then, becomes one of whether the complex of evidence in this case permitted a determination, beyond a reasonable doubt and within the fair operation of reasonable minds, that the accused, at the inception of, or at some time during his unauthorized absence, possessed the intention permanently to abandon the naval service. See United States v. O'Neal (No 25) 1 USCMA 138, 2 CMR 44, decided February 7, 1952; United States v. Shull (No 45) 1 USCMA 177, 2 CMR 83, decided February 18, 1952; United States v. Peterson, supra. We are convinced that it did. The accused was sworn as a witness in his own behalf and specifically testified that he did not intend permanently to abandon the naval service; that it was his purpose at all times to return thereto; that he did not accept or seek civilian employment; and that—apart from his uniform—he carried nothing with him when he left his station. On cross-examination petitioner stated that he had no reason for his failure to report to his base at the expiration of his leave—that it was "just one of those things." In addition, he testified that he did not wear his uniform at all times during his absence; that his home of record was in California; and that he spent the period of his unauthorized absence in Washington, D. C.; New York; Scranton, Pennsylvania, and at several points in Florida. It appeared that he was arrested for vagrancy by civilian police in Miami, Florida—some 800 miles from his duty station—and delivered to naval authorities.

Oral arguments in the instant case and in United States v. Peterson, supra, were heard by us on the same day, and both cases involved the question of sufficiency of the evidence to support findings of guilty of desertion. In view of similarities in the nature of the evidence contained in the records of both cases, much of what was said in that case is applicable to the case at bar. However, notwithstanding these similarities, there are significant respects in which the two cases differ sharply. It is these essential differences of fact which lead us to a conclusion herein opposite to that reached in the Peterson case. In this connection it is observed that appellate defense counsel, in seeking a reversal in this case, lays great stress on the fact that the accused "submitted evidence to show that he never entertained an intent to desert." While it is true that the accused took the stand in his own behalf, and denied that he possessed at any time an intention permanently to abandon the naval service, his testimony also disclosed the existence of a number of damaging facts. Their effect can best be pointed up by reviewing briefly the evidence in the instant case and contrasting it with that in United States v. Peterson, supra—where there was an approximately similar period of absence, where the accused also testified in his own behalf, and where we reached a contrary result. This will also serve to demonstrate the essential differences of fact to which earlier reference was made.

In the Peterson case, the accused assigned as the explanation for his unauthorized absence the fact that his parents had received news of the death of his brother in Korea, and that he wished to be near them in their grief. In the present case, however, petitioner admitted that he was without reason for his failure to return. His only explanation of the lengthy absence was that it was "just one of those things." Secondly, Peterson remained at his home of record during the entire period of the offense, and thus could have been apprehended with ease and returned to military control. On the other hand—although his home was in California—this accused spent the period of his misconduct at various points along the eastern seaboard. Finally, Peterson voluntarily returned to his station and surrendered himself, whereas Ferretti was arrested by civilian authorities for vagrancy at a considerable distance from his duty station. Accused stated

**325**

that he was "heading for base" when picked up for vagrancy in Miami, Florida—apparently en route from the northeast to Camp Lejeune via Miami!

In United States v. McCrary (No 4) 1 USCMA 1, 1 CMR 1, decided November 8, 1951, we used the following language:

"It is the cardinal rule of law that questions of fact are determined in forums of original jurisdiction or by those which are expressly granted the authority by constitution or statutes. Usually, appellate tribunals are limited to correction of errors of law. . . .

. . . . . . . .

"There can be no question that the Congress of the United States intended to adopt this general rule and did not intend to extend review by this Court to questions of fact. Article 67 (d) of the Uniform Code of Military Justice, supra, expressly limits review by this Court."

However, we also spoke as follows in United States v. O'Neal, supra:

"Among other principles of law relevant to the problem before us is that providing in substance that the evidence in a criminal case must establish beyond a reasonable doubt that the accused is guilty of the offense charged. To this must be added, of course, the related proposition, often clothed in varying verbiage, to the effect that the evidence in such a case must exclude every reasonable hypothesis save that of guilt. All of these considerations were recognized by us in United States v. McCrary, supra, together with the observation that the two last mentioned rules exist primarily for the guidance of trial forums. However, we should not have said there, we did not intend to say there, nor did we say there, that their administration by such agencies is above and beyond the supervision of an appropriate appellate tribunal—by this Court, in fact, although limited to 'action only with respect to matters of law.' To hold the converse would effectively deprive appellate courts, including this one, of any sort of effective control over subordinate elements of the judicial scheme in an important area of law administration."

And again in the same case we said:

"These cases appear to establish fully the presence of substantial authority to the effect that if a reasonable inference other than that of guilt may be drawn from the evidence, a trial court should direct for the accused, and in a proper case an appellate court should reverse a conviction."

The following quotation from Stoppelli v. United States, 183 F2d 391, 393 (CA 9th Cir) also appears relevant:

"It is not for us to say that the evidence was insufficient because we, or any of us, believe that inferences inconsistent with guilt may be drawn from it. To say that would make us triers of the fact. We may say that the evidence is insufficient to sustain the verdict only if we can conclude as a matter of law that reasonable minds, as triers of the fact, must be in agreement that reasonable hypotheses other than guilt could be drawn from the evidence."

Applying these principles to the case at bar, we cannot conclude that the court-martial's findings of guilty of desertion were not based on substantial evidence, as that term is interpreted and applied by this Court. We cannot believe that ". . . reasonable minds, as triers of the fact, [would] be in agreement that reasonable hypotheses other than guilt could be drawn from the evidence." See Stoppelli v. United States, supra. To express the same view in another way, we cannot say, in light of our consideration of the present record, that the evidence did not permit a determination of petitioner's guilt beyond a reasonable doubt and within the fair operation of reasonable minds. See United States v. Shull, supra.

In reaching this result we are not unmindful of the fact that the accused, Ferretti, took the witness stand and

sought to explain his lengthy unauthorized absence. However, as we said in the Peterson case, supra:

"It must be obvious that by this reference we are not to be understood as holding, or even remotely suggesting, that the explanatory testimony of an accused person—or other similar element of defensive evidence—will necessarily avoid in any case reasonable inferences arising from operative facts proposed or established by the prosecution. Not at all. This factor, together with its cargo of informational content, constitutes merely one item to be considered with, and in light of, all other evidence in the case in reaching a conclusion as to sufficiency."

While the accused denied categorically that he entertained for any moment of time an intention to abandon the service permanently, it does not follow that the members of the court-martial were bound to accept this protestation as conclusive proof, or even as evidence strongly tending to exculpate petitioner. Both the court-martial and the board of review, acting reasonably, were fully authorized to weigh this assertion of Ferretti, together with the remainder of his testimony and, as well, with all other developed facts and proper inferences concerning his absence—this for the purpose of evaluating his credibility on the point in light of the entire evidential picture. Moreover, the triers of fact were permitted to take into account, in weighing his testimony and determining its credit, the deep personal interest which an accused person in a criminal case has in its outcome. See United States v. Kenney, 90 Fed 257, 268; Wharton, Criminal Evidence, 11th ed, § 1418. To put the matter somewhat differently, the court-martial's members were permitted to judge the inherent probability or improbability of petitioner's protestations, and to consider to what extent, if any, his testimony in this respect had been corroborated or controverted by other evidence in the cause from any source. See United States v. Kenney, supra. In speaking of a similar problem the Court of Appeals for the Second Circuit announced in Coltabellotta v. United States, 45 F2d 117, 118–119, that:

"Being nothing more tangible than a state of mind, the defendant's intent must of necessity remain his secret except only in so far as he disclosed it by speech or conduct. Although he denied any part in her going away and attempted to prove an alibi, the jury had the right to disbelieve him and his evidence and take the facts as disclosed by the government's evidence to be true. It had an equal right to make all reasonable deductions from the facts proved to determine his intent. What he is said to have said indicated no immoral purpose, but rather a desire to prepare for his action for divorce, but his acts, as so often is true, speak louder than words."

From what has been said it is clear that, in view of the Government's case and the very content of the accused's own testimony—together with the inferences logically and reasonably deducible therefrom—the court-martial was permitted to reject his denial of an intention to desert. Manifestly it did so—and we have no power to disturb its action in this particular.

Appellate defense counsel has relied on, and quoted extensively from, two previous desertion decisions handed down by Navy boards of review: United States v. Alexander, 3–51–G–207, 1 CMR 465, decided September 4, 1951, and United States v. Walls, 2–51–G–165, decided September 24, 1951. It is believed that these cases stand on their own facts and are clearly distinguishable from the case at bar. In somewhat this connection we spoke as follows in United States v. Peterson, supra:

"In the present instance we are faced with a problem frequently, if not usually, arising in cases of alleged desertion. In such a situation a clear showing of unauthorized absence is typically present through the routine presentation of extract copies of official military records—leaving as the only controverted question the sufficiency of the evidence to support the finding of an in-

tention to remain away permanently, to avoid hazardous duty, or to shirk important service, as the case may be. *It is in this area that the presence or absence of facts—or perhaps even of a single fact—may lead to divergent results.* Accordingly, in this case, as elsewhere, it is our duty carefully to review the evidence for the limited purpose of determining legal sufficiency." [Italics supplied]

Accordingly, the decision of the board of review is affirmed.

Chief Judge QUINN concurs. Judge LATIMER concurs in the result.