UNITED STATES, Appellee
v.
MACK WEST, Private, U. S. Army, Appellant
1 USCMA 590, 5 CMR 18

No. 613

Decided August 14, 1952

LT. COL. James C. Hamilton, USA, and 1ST LT. James A. Hagan, USA, for Appellant.

LT. COL. Thayer Chapman, USA, and CAPT. Irvin M. Kent, USA, for Appellee.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

The accused in this case was tried by general court-martial on October 16, 1951, at Fort Hood, Texas, for desertion with intent to remain absent permanently, in violation of Article of War 58, 10 USC § 1530. He was found guilty as charged. The findings and sentence were approved by the convening authority, and affirmed without opinion by a board of review in the office of The Judge Advocate General, United States Army. On May 19, 1952, we granted the accused's petition for review. Two assignments of error have been made: (1) That the evidence is insufficient as a matter of law to support the court-martial's findings of guilty of desertion; and (2) That the court-martial erred to the substantial prejudice of the accused in its post-finding consideration of two previous convictions.

II

We dispose first and briefly of the contention of insufficiency. We have examined the record and ■ concluded that the first assignment of error is without merit. The evidence shows that the accused absented himself without authority from his organization on May 23, 1951, just before its departure for an overseas assignment, and remained absent until his apprehension in Dallas, Texas, on September 11, 1951. Petitioner took the stand and denied an intention to remain absent permanently. Instead, he stated, he fully intended at all times to return to his unit and to accompany it to its overseas destination. In this connection we recently said in United States v. Ferretti (No. 213), 1 USCMA 323, 3 CMR 57, decided April 18, 1952:

"While the accused denied categorically that he entertained for any

591

moment of time an intention to abandon the service permanently, it does not follow that the members of the court-martial were bound to accept this protestation as conclusive proof, or even as evidence strongly tending to exculpate petitioner. Both the court-martial and the board of review, acting reasonably, were fully authorized to weigh this assertion of Ferretti, together with the remainder of his testimony and, as well, with all other developed facts and proper inferences concerning his absence—this for the purpose of evaluating his credibility on the point in light of the entire evidential picture. Moreover, the triers of fact were permitted to take into account, in weighing his testimony and determining its credit, the deep personal interest which an accused person in a criminal case has in its outcome. See United States v. Kenney, 90 Fed 257, 268; Wharton, Criminal Evidence, 11th ed, § 1418. To put the matter somewhat differently, the court-martial's members were permitted to judge the inherent probability or improbability of petitioner's protestations, and to consider to what extent, if any, his testimony in this respect had been corroborated or controverted by other evidence in the cause from any source. . . ."

To the same effect is the Manual for Courts-Martial, United States, 1951, paragraph 164a, page 314:

". . . Although the accused may testify that he intended to return, such testimony is not compelling, as the court may believe or reject the testimony of any witness in whole or in part. . . ."

Actually the accused's testimony furnished inferential support for the Government's case because of his statement that at the time he left his organization, elements thereof were packing for overseas shipment, and that it is now located beyond the continental limits of the United States. Moreover, he volunteered the information that immediately before his unauthorized departure he had assaulted a sergeant, that he anticipated court-martial proceedings and feared a sentence to confinement.

On this latter subject the Manual, supra, states:

". . . The inference [of an intent to remain absent permanently] may be drawn from evidence proving that the accused . . . was dissatisfied in his company or on his ship or with military service; . . . that he was under charges or had escaped from confinement at the time he absented himself; . . . ."

We find no difficulty in holding that the evidence before the court-martial was more than ample as a matter of law to support findings of guilty of desertion. See United States v. McCrary (No. 4), 1 USCMA 1, 1 CMR 1, decided November 8, 1951; United States v. Peterson (No. 199), 1 USCMA 317, 3 CMR 51, decided April 17, 1952; United States v. Ferretti, supra; United States v. O'Neal (No. 25), 1 USCMA 323, 2 CMR 44, decided February 7, 1952; United States v. Shull (No. 45), 1 USCMA 177, 2 CMR 83, decided February 18, 1952.

### III

We turn now to petitioner's final assignment of error. Following an announcement of findings in open court, and after a reading of personal data, the record reports the following:

"TC: Listen, West, and tell me whether or not this is correct.

The trial counsel read the record of previous convictions.

TC: Are those correct?
ACCUSED: Yes, sir."

It will be noted that there was no reference to any number of previous convictions, much less to their nature. The quotation contains the only mention whatever of such convictions in the record of trial. However, attached to the record, and marked in pencil "Ex–6–," is a duly authenticated service record extract copy reflecting prior convictions of the accused of absence without leave for approximately one month, and willful disobedience of lawful orders. All other documents attached as exhibits are enumerated in typescript. The record does not report that "Ex–

6–" was ever offered or received in evidence, nor is "Ex–6–" listed among other exhibits at the appropriate place on the record cover sheet. However, it is clear that the court-martial in assessing sentence here considered two previous convictions of petitioner.

## IV

There are two leading cases in the field under consideration: United States v. Carter (No. 159), 1 USCMA 108, 2 CMR 14, decided January 18, 1952, and United States v. Zimmerman (No. 261), 1 USCMA 160, 2 CMR 66, decided February 7, 1952. In the first of these the trial counsel stated:

"I have evidence of two previous convictions committed during the current enlistment and within three years next preceding the commission of an offense of which the accused has been convicted at this trial, to submit as follows:—"

Then followed a recitation in detail of the date and nature of the prior charges, the character of the courts hearing them, the sentences in both cases, and the actions of the convening authority and immediate superior in command. The trial counsel then inquired if the accused objected to the evidence of previous convictions. His counsel replied in the negative. Neither the original service record, nor a certified copy thereof, nor any other document, was offered in evidence, and no further action was taken to establish the existence of the two convictions. We held that there had been a failure on the part of the Government to prove the convictions relied on, reversed the decision of the board of review, and remanded the case for corrective action.

Zimmerman's situation differed somewhat from that of Carter. There, after findings, trial counsel stated that he had evidence of three previous convictions which were thereupon read to the court. Following this, he asked the accused if there was any objection to the statement of previous convictions as read. Defense counsel replied "No objection." No supporting document was offered or received in evidence, but, unlike the situation in Carter, there was attached to the record an extract from the service record of the accused showing three prior convictions by court-martial. We concluded that the Government had not properly established the presence of the prior convictions considered by the court-martial, and, accordingly, reversed and remanded the case. In comparing the Zimmerman situation with Carter, we used the following language:

". . . The difference between Carter and the case now before us is that in the former the record of previous convictions from which the trial counsel read was not appended to the record, whereas here it is. We feel that the distinction is not vital. We stated in Carter that an unsworn statement of the trial counsel was not competent evidence of previous convictions. We have no more than that here. . . .

"The principal difficulty with the Government's position is that there is nothing in the record to show that the document attached to the record is the one from which the trial counsel was reading, or that this document was ever shown to the defense. The document is not labeled as an exhibit, nor was it specifically referred to by trial counsel. . . ."

The case at bar differs from Zimmerman in only two particulars. In the first place, the appended service record extract copy there bore no designation as an exhibit, whereas that included here is described on its face as "Ex–6–." However, it is not found enumerated among other exhibits in the usual cover sheet listing. Furthermore, the record in the earlier case contains an account of the information orally furnished the court-martial respecting previous convictions. Literally, all we know in the case at bar is that "The trial counsel read the record of previous convictions." While the first of these differences may be said to point away from the result reached by us in Zimmerman, it is believed that it does so only hesitantly and with uncertainty. On the other hand, the second provides an even stronger case for disapproval. All in all we regard the two cases as

indistinguishable, and conclude that the Government failed here, as there, to establish properly the prior convictions considered by the court.

We are told, however, that by his response to the trial counsel's inquiry concerning correctness, the accused waived objection to the erroneous procedure followed in this case. We think not. In this connection, we are not unmindful of the fact that in both Carter and Zimmerman defense counsel, and not the accused, responded to the Government's inquiry; that it took the form of a question as to the presence of objection; and that the reply indicated merely that no objection was interposed. Here, on the other hand, it may be suggested, the question was directed to the accused; it sought information concerning correctness; the accused replied personally; and his response constituted an affirmative approval of the statement of trial counsel regarding previous convictions. We cannot accept this as a basis for distinguishing the present case from Carter and Zimmerman. If the statement of trial counsel is unacceptable as competent evidence on this subject, so, we believe, is the informal and casual agreement of petitioner. Likewise, we do not suppose that the colloquy between trial counsel and the accused was intended to operate as a stipulation, nor that it did so. See Manual for Courts-Martial, supra, paragraph 154b, page 296, and Appendix 8, Guide—Trial Procedure, page 510. Moreover, the subject matter of no sort of stipulation is reflected either in the record of trial or in any duly offered and admitted exhibit. We conclude, therefore, that the defense conduct in this particular amounts to no more than a failure to object to the statement made by trial counsel, and that no valid waiver was effected. The following language from United States v. Carter, supra, is relevant at this point:

". . . Even though the accused made no objection to the statement, and by so doing waived his right to complain about what was said, this did not prevent him from objecting to subsequent proceedings. There is no showing that the accused was informed of the nature and complete-

594

ness of the memorandum prior to or at the time the statement was made, nor is there a showing that he was afforded an opportunity to inspect it under such circumstances as to preclude him from making a legal objection when, and if, tendered. At least the accused is entitled to see the document from which the statement is read and to object to its subsequent admission in evidence if it fails to meet all requirements of official documents. . . .

• • • • • •

"While the record shows the accused understood his right to object to the statement made by the trial counsel, it does not, and could not, show that he clearly understood he was waiving his objection to the introduction of evidence to sustain the statement, because no offer was then suggested and none has ever been made."

Adverting finally to the question of prejudice, it is noted that a difference exists betwen the Carter case, on the one hand, and Zimmerman and the present case, on the other. In Carter the sentence imposed by the court-martial was in excess of that authorized by law in the absence of two or more previous convictions. See Manual for Courts-Martial, United States, 1951, paragraph 127c, Table of Maximum Punishments, Sections A and B, pages 220 and 228. See also Manual for Courts-Martial, U. S. Army, 1949, paragraph 117c, Table of Maximum Punishments, Sections A and B, pages 134, 142, 143. In the case at bar, however, as well as in Zimmerman, the sentences imposed were within legal limits, apart from any consideration of prior convictions. See Manual for Courts-Martial, United States, 1951, paragraph 127c, Table of Maximum Punishments, Section A, page 220. See also Manual for Courts-Martial, U. S. Army, 1949, paragraph 117c, Table of Maximum Punishments, page 134. Concerning this phase of the problem we had the following to say in the Zimmerman case, which language we adopt for present purposes:

". . . In Carter, supra, the exist-

ence of substantial prejudice was clear since the sentence imposed could not have been given in the absence of proof of previous convictions. The maximum sentence which this special court-martial could have imposed for the offenses of which the accused was convicted is bad-conduct discharge and confinement for four months. He received only a slightly lesser sentence: bad conduct discharge and confinement for three months. We cannot say that the court was not influenced by the record of previous convictions. The prior offenses alleged were missing ship, absence over leave, drunk while on liberty, use of obscene language, and striking the shore patrol. It would be the unusual—even the unreasonable—man who would not be influenced by this history of prior offenses in assessing the degree of punishment to be given. We would have to close our eyes to reality to assume the contrary."

We record in passing our view that the instant case is clearly distinguishable from United States v. Castillo (No. 449), 1 USCMA 352, 3 CMR 86, decided May 2, 1952. There—however, inartificially—the document reflecting previous convictions was in fact offered and received in evidence.

V

In our opinion error was committed here to the substantial prejudice of the accused. Accordingly, the record of trial is returned to The Judge Advocate General, United States Army, for reference to the board of review which previously considered the case for determination of appropriateness of sentence, and for other action not inconsistent with the views expressed herein.

Chief Judge QUINN and Judge LATIMER concur.