UNITED STATES, Appellee

v.

Mervyn W. OLIVER Jr., Specialist
U.S. Army, Appellant

No. 11-0089

Crim. App. No. 20091109

United States Court of Appeals for the Armed Forces

Argued March 7, 2011

Decided May 5, 2011

BAKER, J., delivered the opinion of the Court, in which EFFRON, C.J., and ERDMANN, STUCKY, and RYAN, JJ., joined.

<u>Counsel</u>

For Appellant:  Captain Tiffany K. Dewell (argued); Colonel Mark Tellitocci, Lieutenant Colonel Imogene M. Jamison, Lieutenant Colonel Peter Kageleiry Jr., and Captain Barbara A. Snow-Martone (on brief); Lieutenant Colonel Jonathan F. Potter.

For Appellee:  Captain Kenneth W. Borgnino (argued); Colonel Michael E. Mulligan, Major Christopher B. Burgess, Major Sara M. Root, and Major Amber J. Williams (on brief).

Military Judge:  Denise R. Lind

THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

Judge BAKER delivered the opinion of the Court.

At a general court-martial convened at Fort Eustis, Virginia, a panel composed of officer and enlisted members convicted Appellant, contrary to his plea, of one specification of desertion with the intent to remain away permanently, in violation of Article 85, Uniformed Code of Military Justice (UCMJ), 10 U.S.C. § 885 (2006). The adjudged and approved sentence consists of a bad-conduct discharge, confinement for six months, and reduction to E-1.

On review, the United States Army Court of Criminal Appeals summarily affirmed. United States v. Oliver, No. ARMY 20091109 (A. Ct. Crim. App. Sept. 9, 2010) (unpublished).

We granted review of the following issue:

> WHETHER THE EVIDENCE WAS LEGALLY SUFFICIENT TO SUPPORT THE FINDING OF GUILTY TO DESERTION.

For the reasons set forth below, we conclude that the evidence was legally sufficient under Jackson v. Virginia, 443 U.S. 307, 319 (1979). Therefore, we affirm the United States Army Court of Criminal Appeals.

## I.  BACKGROUND

While stationed at Redstone Arsenal, Alabama, Appellant received orders dated June 7, 2006, to report on September 10, 2006, to the Enlisted Replacement Detachment at Fort Eustis, Virginia. On July 19, 2006, Appellant requested twenty-six days

of leave beginning on August 16, 2006, and ending on September 10, 2006, the day on which Appellant was to report to Fort Eustis.  Appellant took leave as scheduled, but rather than reporting to Fort Eustis on September 10, 2006, as scheduled, Appellant took up residence in New York with his mother and daughter until July 15, 2009, nearly three years later.  On July 15, 2009, Appellant voluntarily turned himself in to military authorities at Fort Hamilton, New York.[1]  He flew to Norfolk, Virginia that same day, where agents from the Criminal Investigations Division (CID) met him at the airport.  In addition to the above facts, Appellant agreed in a stipulation of fact that his absence beyond his requested leave was unauthorized.  Appellant was subsequently charged with desertion with the intent to remain away permanently.

At trial, Appellant pled not guilty to desertion but guilty of the lesser offense of absence without leave (AWOL) in violation of Article 86, UCMJ, 10 U.S.C. § 886 (2006).  The Government, however, proceeded on the contested charge of desertion offering the testimony of Appellant's older sister as evidence that Appellant had the additional requisite intent to "remain away . . . permanently."  Appellant's sister testified regarding the circumstances of Appellant's stay in New York. The testimony included the following observations:  She "would

---

[1] Fort Hamilton is located in Brooklyn, New York.

3

see [Appellant] frequently, [mostly] every day." She did not know whether Appellant had brought his military property with him. She "cannot say for certain" that Appellant was employed, but she was "sure he had to have something" because "he supported his daughter at the time." She recalled dropping Appellant off at a pizzeria, "but I don't know if he worked there." Finally, trial counsel asked whether Appellant "ever t[old] you why he left or what he was doing there?" to which she responded, "To my knowledge, he . . . finished his service. . . . I just believed his service was finished, because if he was home -- he had been in the military -- what? -- I think about ten years at that time, so I would have said that his service was over."

During the Article 39(a), UCMJ, 10 U.S.C. § 839(a) (2006), session that followed, defense counsel moved under Rule for Courts-Martial (R.C.M.) 917 to dismiss the charge based on insufficient evidence that Appellant had the requisite intent for the offense of desertion. The military judge denied the motion, finding that the Government raised circumstantial evidence that the court could consider under Manual for Courts-Martial, United States pt. IV, para. 9.c.(1)(c)(iii) (2008 ed.) (MCM). The military judge specifically noted that Appellant was away for "slightly less than three years," "that [Appellant] was in New York City," Appellant "made no effort to surrender

4

himself to military control," and "in today's current environment of planes, trains, automobiles, internet, [Appellant had] the access to military installations within the proximity of New York City."

The defense then elicited testimony from Appellant that when he left Redstone Arsenal, Alabama, "My intent was to PCS to Fort Eustis, sir." Appellant further testified that he did not dispose of any of his military property, but "put it in storage on the household good shipment to forward it to Fort Eustis." Appellant testified to being satisfied with the military and re-enlisting one month prior to taking leave. He also testified that he felt his command was "very good." Appellant testified that he never stated any intention to never return to the Army, but that "I always had an intent to come to Fort Eustis." Finally, Appellant testified that the reason he remained in New York for thirty-three months before turning himself in was that "I had a crisis with my daughter . . . It took this long to get her to a sustainable manner."

On cross-examination, trial counsel asked Appellant, "in the nearly three years that you remained absent, did you ever make any attempt to go get your military property from storage?" Appellant replied, "No, ma'am."

## II.  DISCUSSION

A.  Circumstantial Evidence of Intent

Appellant was charged with desertion in violation of Article 85, UCMJ, on the theory of desertion with intent to remain away permanently derived from subsection (a)(1) of the statute, which provides:

> Any member of the armed forces who . . . without authority goes or remains absent from his unit, organization, or place of duty with the intent to remain away permanently . . . is guilty of desertion.

The elements of desertion with the intent to remain away permanently, as stated in the MCM, are as follows:

> (1)  That the accused absented himself or herself from his or her unit, organization, or place of duty;
>
> (2)  That such absence was without authority;
>
> (3)  That the accused, at the time the absence began or at some time during the absence, intended to remain away from his or her unit, organization or place of duty permanently; and
>
> (4)  That the accused remained absent until the date alleged.

MCM pt. IV, para. 9.b.(1).  The dispute in this case centers on the third and only element not conceded by Appellant in the stipulation of fact and his plea to unauthorized absence: whether the accused at some time during the absence intended to remain away permanently.

Both parties rely on the explanation section of the MCM in support of their arguments.  Among other things, the MCM states

6

that the requisite intent may be proved by circumstantial

evidence and essentially summarizes previous legal precedent in

providing examples of such evidence and how it may be used:

> The intent to remain away permanently may be established by circumstantial evidence. Among the circumstances from which an inference may be drawn that an accused intended to remain absent permanently or; that the period of absence was lengthy; that the accused attempted to, or did, dispose of uniforms or other military property; that the accused purchased a ticket for a distant point or was arrested, apprehended, or surrendered a considerable distance from the accused's station; that the accused could have conveniently surrendered to military control but did not; that the accused was dissatisfied with the accused's unit, ship, or with military service; that the accused made remarks indicating an intention to desert; that the accused was under charges or had escaped from confinement at the time of the absence; that the accused made preparations indicative of an intent not to return (for example, financial arrangements); or that the accused enlisted or accepted an appointment in the same or another armed force without disclosing the fact that the accused had not been regularly separated, or entered any foreign armed service without being authorized by the United States.

> On the other hand, the following are included in the circumstances which may tend to negate an inference that the accused intended to remain away permanently: previous long and excellent service; that the accused left valuable personal property in the unit or on the ship; or that the accused was under the influence of alcohol or drugs during the absence.

MCM pt. IV, para. 9.c.(1)(c)(iii).

We begin our analysis with two observations. First, many

of the factors identified in the MCM can cut both ways depending

on the circumstances of the case. When an absent servicemember

takes on civilian employment, for example, a factfinder might

derive both an inference that he is making financial

arrangements to remain away permanently or alternatively that he is merely providing for himself on a temporary basis until he returns.  This is especially true in cases such as this, where the Government merely raises the circumstances listed in the MCM rather than providing additional context on the record through further examination.  In addition, as both sides' arguments reflect, the storage of household goods may reflect the abandonment of property, demonstrating an intent to remain away permanently, or the opposite, an intent to return to reclaim the property.

Moreover, given modern technology, the time or location of surrender can also give rise to differing inferences.  For example, as noted by the military judge, although absent servicemembers may be thousands of miles from their duty stations, modern transportation and communication technology has virtually ensured that servicemembers can quickly surrender to or communicate with military authorities from virtually any location.  Similarly, a decision to surrender in one's hometown rather than at one's appointed duty station can reflect a prior intent to remain away permanently, but surely it can just as likely reflect a desire to have the government initially bear the cost of return travel, or indeed an intent to return as soon as possible.

8

Second, at the appellate level the question presented is one of legal sufficiency, not factual sufficiency.  Both parties argue that the presence or absence of several of these factors either supports an inference of an intent to remain away permanently or negates it.  Both parties also rely in part upon the pre-Jackson cases giving rise to those factors.  Ultimately, the Court is invited to weigh these factors anew and determine whether Appellant possessed at some point an intent to remain away permanently.  That is not our role.  Rather, from the beginning of our case law to our current application of the Jackson standard, our role has been to review for legal sufficiency applying long-standing doctrines of appellate deference to the factfinder.

B.  Legal Sufficiency Review in Historic Context

In United States v. McCrary, the first opinion published by the United States Court of Military Appeals, this Court reviewed the legal sufficiency of a desertion conviction.  1 C.M.A. 1, 1 C.M.R. 1 (1951).  In light of the opinion's historic place in this Court's case law, the Court set forth the foundational principles of appellate review of legal sufficiency:

> [I]f there is any substantial evidence in the record to support a conviction an appellate court, in the absence of other error, will not set aside the verdict.  In stating this rule we have not overlooked the converse principle that where there is no substantial evidence in the record to sustain the conviction the appellate court will set it aside.  While this latter rule in a sense permits this

> court to weigh and evaluate the testimony for the purpose
> of testing its sufficiency for a limited purpose, it does
> not permit us to substitute our judgment for that of the
> triers of fact . . . . Furthermore, this rule neither
> precludes [the trier of fact] from drawing reasonable
> inferences from the evidence presented nor does it permit
> this court to set aside a conviction because we might have
> inferred differently.

Id. at 3.

Desertion cases reviewing legal sufficiency following McCrary reflect a detailed analysis of the factors now listed in the MCM. See United States v. Care, 18 C.M.A. 535, 540, 40 C.M.R. 247, 252 (1969) (holding that an extended absence combined with apprehension 3,000 miles away from duty station supports an inference of the requisite intent); United States v. Cothern, 8 C.M.A. 158, 161, 23 C.M.R. 382, 385 (1957) (holding that a period of absence may not act as a substitute for the necessary element of intent); United States v. Peterson, 1 C.M.A. 317, 319-21, 3 C.M.R. 51, 53-55 (1952) (holding that the evidence was insufficient to support an inference of the requisite intent given the appellant's relocation to a foreseeable residence related to a reason for absence, lack of civilian employment, an intention to return, voluntary surrender, and preservation of the uniform); United States v. Ferretti, 1 C.M.A. 323, 325-28, 3 C.M.R. 57, 59-62 (1952) (holding that the evidence of the requisite intent was sufficient given that the appellant had no reason for leaving,

lived in various locations, and was apprehended by civilian
authorities).  However detailed, the standard of review applied
in each of these cases reflected the principle of deference to
triers of fact found in McCrary:

> Our inquiry, then, becomes one of whether the complex
> evidence in this case permitted a determination, beyond a
> reasonable doubt and within the fair operation of
> reasonable minds, that the accused, at the inception of, or
> at some time during his unauthorized absence, possessed the
> intention permanently to abandon the naval service.

Ferretti, 1 C.M.A. at 325, 3 C.M.R. at 59; see also Peterson, 1
C.M.A. at 320, 3 C.M.R. at 54.

   C.  The Jackson Standard

   Ten years following this Court's decision in Care, the last
of McCrary-desertion sufficiency cases, the Supreme Court
decided Jackson v. Virginia, 443 U.S. 307 (1979).  In Jackson,
the Supreme Court established a new standard of review in legal
sufficiency cases founded on the same principle of deference to
the trier of fact.  The Supreme Court stated that in reviewing
for legal sufficiency of the evidence, "the relevant question"
an appellate court must answer is "whether, after viewing the
evidence in the light most favorable to the prosecution, any
rational trier of fact could have found the essential elements
of the crime beyond a reasonable doubt."  Id. at 319.

   Jackson's two distinctive features establish the contours
of appellate deference to triers of fact:  First, it "does not

11

require a court to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt,'" rather it requires that a reviewing court examine only whether "any rational trier of fact" could have made that determination.  Id. at 318-19.  Thus, the Jackson standard, "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  Id. at 319.  Second, it requires courts to "review[] the evidence in a light most favorable to the prosecution," which preserves "the factfinder's role as weigher of evidence" and "impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process."  Id.

In the context of desertion the Jackson standard removes from this Court's review some of the difficulties inherent in making an independent determination regarding an appellant's intent to remain away permanently based on the MCM's list of circumstantial evidence.  Under Jackson, our decision does not hinge on whether or how the parties' lists of circumstantial evidence or negating factors stack up against each other.  Rather, it hinges on whether reasonable factfinders could have drawn inferences one way or the other under a given set of circumstances.  As government counsel argued at oral argument,

the appellate question is not whether the evidence is better read one way or the other, but whether under Jackson a reasonable factfinder reading the evidence one way could have found all the elements of the offense beyond a reasonable doubt.

    D.   Jackson Applied

    This Court reviews the issue of legal sufficiency de novo. United States v. Green, 68 M.J. 266, 268 (C.A.A.F. 2010).  The question presented in this case is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found . . . beyond a reasonable doubt" that Appellant intended to remain away permanently at some time during his absence.  Jackson, 443 U.S. at 319.  We believe so.

    Appellant was absent for an extended amount of time, nearly three years.  Although duration alone does not prove an intent to remain away permanently, Cothern, 8 C.M.A. at 161, 23 C.M.R. at 385, it may nevertheless be a factor from which a factfinder might infer intent in concert with other evidence.  Care, 18 C.M.A. at 540, 40 C.M.R. at 252.  Although the Government did little to develop the factual context of its evidence at trial, there is other evidence in the record of trial from which a reasonable trier of fact could have found the element of intent when combined with the length of absence.  During his absence, Appellant had ready access to military authorities but did not

13

report himself or inform the military regarding his "crisis" with his daughter. Neither did Appellant's testimony provide a basis upon which to evaluate whether the crisis necessitated a temporary, lengthy, or permanent absence. Despite almost daily interaction with his sister, Appellant made no indication of his current relationship with the military whatsoever. Indeed, his sister was left with the impression that he was out of the military. There are also facts that could cut the other way on intent. For example, Appellant was living with his mother rather than finding his own residence. If he was working, the only evidence in the record is suggestive of a temporary rather than permanent job. Nonetheless, given Appellant's behavior, we believe a rational trier of fact could have concluded that at some point during his lengthy period of absence Appellant possessed the intent to remain away permanently. During his absence of nearly three years, Appellant lived with family members and interacted with his sister on an almost daily basis. Yet, there is no evidence in the record that he ever wore his uniform or indicated in any way to anyone his ongoing military commitment, thus causing his sister to think he was out of the military. A rational factfinder could have determined that such behavior manifested an intent to remain away permanently at some point during his absence and was inconsistent with Appellant's testimony that it was always his intent to return.

III.  CONCLUSION

For the foregoing reasons, the decision of the United States Army Court of Criminal Appeals is affirmed.