# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, RODRIGUEZ, and FLEMING
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Sergeant REGINALD D. BROWN, JR.**
**United States Army, Appellant**

ARMY 20180176

Headquarters, United States Army Alaska
Scott Oravec and Timothy Hayes, Military Judges
Colonel Roseanne M. Bennett, Staff Judge Advocate

For Appellant: Colonel Elizabeth G. Marotta, JA; Lieutenant Colonel Tiffany D. Pond, JA; Captain Zachary A. Szilagyi, JA; Captain Alexander N. Hess, JA (on brief); Lieutenant Colonel Tiffany D. Pond, JA; Major Julie L. Borchers, JA; Captain Alexander N. Hess, JA (on reply brief).

For Appellee: Lieutenant Colonel Eric K. Stafford, JA; Major Jeremy S. Watford, JA; Major Ian M. Guy, JA (on brief).

31 July 2019

---------------------------------
SUMMARY DISPOSITION
---------------------------------

BURTON, Senior Judge:

On appeal, appellant contends his convictions for child endangerment and willful disobedience of a superior commissioned officer are legally and factually insufficient.[1] We agree and grant relief in our decretal paragraph and reassess appellant's sentence.[2]

---

[1] A panel with enlisted representation sitting as a general court-martial convicted appellant, contrary to his pleas, of two specifications of attempted voluntary manslaughter, one specification of willful disobedience of a superior commissioned officer, two specifications of assault with intent to commit murder, and two specifications of child endangerment, in violation of Articles 80, 90, and 134,

(continued . . .)

## BACKGROUND

On the evening of 18 June 2017, appellant and his wife, CM, argued while at a neighbor's barbecue. Shortly after midnight, CM decided to sleep in a guest bedroom at the neighbor's home. As she was entering the guest bedroom, appellant attacked her with a knife, stabbing her in the neck, arms, and head. CM fled to the bathroom. Appellant chased after her and continued to assault her. CM was eventually able to escape the neighbor's house and fled into the street.

Appellant returned to their own home to retrieve his .45 caliber pistol. According to TM, their fourteen year-old son, both he and his sister, RB, saw appellant enter their house with blood on his hands. TM testified that RB asked appellant, if he had "killed anybody," to which appellant responded, "not yet."

TM then ran outside "to see what was going on," and saw his mother running down the street and falling at the curb. Appellant entered the street moving toward CM with the pistol; he loaded it and pointed it at her. TM stepped in between appellant and CM. CM was able to run to another neighbor's home and get assistance. An ambulance transported CM to the hospital where she received seventy stitches to wounds on her face, scalp, forearms, and arms.

Appellant was apprehended by military police and released to his unit in the afternoon on 19 June 2017. Appellant's company commander, Captain (CPT) KJ, ordered appellant not to communicate with CM, whether it be directly or indirectly.

---

(. . . continued)
Uniform Code of Military Justice, 10 U.S.C. §§ 880, 890, and 934 [UCMJ]. After findings and prior to sentencing, the military judge conditionally dismissed two specifications of assault with intent to commit murder as being an unreasonable multiplication of charges and not reflecting the findings of the court. The panel sentenced appellant to a dishonorable discharge, confinement for twenty-five years, forfeiture of all pay and allowances, a reprimand, and reduction to the grade of E-1. Appellant was credited with 307 days of confinement credit against his sentence. The convening authority approved the adjudged findings and sentence.

[2] After due consideration, appellant's other assigned errors and matters personally submitted pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1992), do not merit discussion nor relief.

**LAW AND DISCUSSION**

We review questions of legal and factual sufficiency de novo. *United States v. Walters*, 58 M.J. 391, 395 (C.A.A.F. 2003). "The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Gutierrez*, 73 M.J. 172, 175 (C.A.A.F. 2014) (quoting *United States v. Bennitt*, 72 M.J. 266, 268 (C.A.A.F. 2013)). The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, the members of the service court are themselves convinced of appellant's guilt beyond a reasonable doubt." *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017) (quoting *United States v. Oliver*, 70 M.J. 64, 68 (C.A.A.F. 2011)).

*A. Child Endangerment*

We will first address the legal and factual sufficiency of appellant's conviction for child endangerment of his daughter, RB (Specification 2 of Charge III). The panel was instructed on the following elements:

(1) That on or about 19 June 2017, at or near Fort Wainwright, Alaska, the accused had a duty for the care of [RB];

(2) That [RB] was under the age of 16 years;

(3) That on or about 19 June 2017, at or near Fort Wainwright, Alaska the accused endangered [RB's] mental health, safety, and welfare through culpable negligence by walking past her with blood-soaked hands after stabbing [CM]; and,

(4) That under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

In reviewing the evidence contained in the record for factual sufficiency, we are concerned with the lack of evidence to support the third element. The government had the burden to establish appellant's conduct subjected RB to a "reasonable probability of harm." *United States v. Plant*, 74 M.J. 297, 299 (C.A.A.F. 2015).

3

The only testimony concerning what RB observed or said is from TM. According to TM, RB saw appellant enter the house with bloody hands and RB asked whether he "killed anybody." It is reasonable to infer that appellant's act of walking past her with blood-soaked hands *might* harm RB's mental health, safety, and welfare. However, as our superior court noted in *Plant*, "the threshold of risk for endanger is conduct that subjects the child to a reasonable probability, not merely a reasonable possibility, of harm." 74 M.J. at 300 n.4. (internal quotation marks omitted). The record is devoid of RB's account and reaction to seeing appellant walk past her with blood-soaked hands. Furthermore, there is no evidence that RB was aware that the blood on her father's hands belonged to her mother. Accordingly, after making allowances for not having observed the trial, we are not convinced beyond a reasonable doubt of appellant's guilt for child endangerment of RB. *See United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987).

### B. Willful Disobedience of a Superior Commissioned Officer

We next turn to the legal and factual sufficiency of Charge IV and its specification, appellant's conviction for willful disobedience of a superior commissioned officer, CPT KJ. The panel was instructed on the following elements:

(1) That the accused received a certain lawful command to restrain from initiating any contact or communication with [CM] from [CPT KJ];

(2) That, at the time, [CPT KJ] was the superior commissioned officer of the accused;

(3) That the accused, at the time, knew that [CPT KJ] was his superior commissioned officer; and,

(4) That between on or about 19 and 24 June 2017, at or near Fort Wainwright, Alaska, the accused willfully disobeyed the command.

The government argues appellant violated CPT KJ's no contact order on two occasions. The first instance is appellant's text message to CM on 19 June 2017 stating, "He was sorry for what he had done." However, we find the record devoid of any evidence appellant sent the text message to CM after CPT KJ issued him the no contact order. CM testified she received a text message from appellant on 19 June 2017. She did not recall what time the message was sent, just that she read it after she left the hospital at 0845 on 19 June 2017. Meanwhile, CPT KJ testified he issued the no contact order to appellant in the afternoon on 19 June 2017 when appellant was released from the military police station and returned to his unit. Captain KJ did not specify an actual time he gave appellant the no contact order, nor

4

did the government introduce the written order into evidence. Accordingly, we are not convinced beyond a reasonable doubt appellant sent CM the text message in violation of CPT KJ's order.

The second instance the government argues appellant violated the no contact order is when another soldier in appellant's unit, Specialist (SPC) R, called CM. According to CM's testimony, "the following day" SPC R called her and stated, "he had seen [appellant] and [appellant] had voice (sic) to him how sorry he was. He didn't mean to do anything that he had done and he just wanted to let me know that he loves me." The government never clarified whether appellant requested SPC R contact CM to pass on this message or whether SPC R contacted her on his own volition. Specialist R did not testify. Accordingly, we are not convinced beyond a reasonable doubt appellant willfully disobeyed CPT KJ's order.

## CONCLUSION

On consideration of the entire record, the findings of guilty to Specification 2 of Charge III and Charge IV and its Specification are SET ASIDE and DISMISSED. The remaining findings of guilty are AFFIRMED.[3]

We reassess the sentence in accordance with the principles of *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013) and *United States v. Sales*, 22 M.J. 305, 307-08 (C.M.A. 1986). Appellant's affirmed offenses are of the type that this court has the experience and familiarity with which to reliably determine what sentence would have been imposed absent appellant's conviction for willful disobedience of a superior commissioned officer and one of the specifications of child endangerment. Based on his convictions, appellant could have been confined for thirty-seven years. The gravamen of appellant's misconduct is his twice attempting to kill his wife with a knife and .45 caliber pistol. For these offenses alone, appellant's maximum punishment was thirty-one years of confinement. The offenses of child endangerment by culpable negligence not resulting in harm and willful disobedience of a superior commissioned officer carry a combined maximum punishment of six years. The dismissal of these two specifications do not constitute a dramatic change in the penalty landscape. For appellant's affirmed offenses, we are confident the panel would have adjudged a sentence of at least twenty years of confinement. Accordingly, we AFFIRM only so much of the sentence as provides for a dishonorable discharge, twenty years of confinement, forfeiture of all pay and allowances, a reprimand, and reduction to the grade of E-1.

---

[3] We note Specifications 3 and 4 of Charge III, assault with intent to commit murder, continue to remain conditionally dismissed pending final judgment as to the legality of the proceedings. *See* UCMJ art. 71(c)(1) (defining final judgment as to the legality of the proceedings); *see also United States v. Britton*, 47 M.J. 195, 203 (C.A.A.F. 1997).

All rights, privileges, and property of which appellant has been deprived by virtue of that portion of the findings set aside by this decision, are ordered to be restored. *See* UCMJ arts. 58b(c) and 75(a).

Judge RODRIGUEZ and Judge FLEMING concur.

FOR THE COURT:

JOHN P. TAITT
Acting Clerk of Court