# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

_____

### No. ACM 40185 (f rev)

_____

### UNITED STATES
*Appellee*

**v.**

### Michael A. VALENTIN-ANDINO
Airman First Class (E-3), U.S. Air Force, *Appellant*

_____

Appeal from the United States Air Force Trial Judiciary

*Upon Further Review*

Decided 7 June 2024

_____

*Military Judge*: Charles E. Wiedie (arraignment); Willie J. Babor; Dayle P. Percle (remand).

*Sentence*: Sentence adjudged on 20 May 2021 by GCM convened at Royal Air Force Lakenheath, United Kingdom. Sentence entered by military judge on 10 June 2021 and re-entered on 21 February 2023: Dishonorable discharge, confinement for 90 days, and reduction to E-1.

*For Appellant*: Major Eshawn R. Rawlley, USAF.

*For Appellee*: Lieutenant Colonel Thomas J. Alford, USAF; Lieutenant Colonel Matthew J. Neil, USAF; Major John P. Patera, USAF; Major Jay S. Peer, USAF; Major Jocelyn Q. Wright, USAF; Mary Ellen Payne, Esquire.

Before RICHARDSON, CADOTTE, and ANNEXSTAD *Appellate Military Judges*.

Senior Judge RICHARDSON delivered the opinion of the court, in which Senior Judge CADOTTE and Senior Judge ANNEXSTAD joined.[1]

_____

[1] Senior Judge Cadotte participated in this decision before his retirement from active duty.

_____

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

_____

RICHARDSON, Senior Judge:

A general court-martial, consisting of officer and enlisted members, convicted Appellant, contrary to his pleas, of one specification of sexual assault upon another Airman in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920, *Manual for Courts-Martial, United States* (2019 ed.) (*MCM*).[2] The members sentenced Appellant to a dishonorable discharge, confinement for 90 days, and reduction to the grade of E-1.

Appellant's case is before this court for the second time. Appellant initially raised four issues: (1) whether Appellant's conviction is legally and factually sufficient; (2) whether the record of trial is substantially incomplete; (3) whether Appellant is entitled to appropriate relief because he was not timely served with the victim's submission of matters in accordance with Rule for Courts-Martial (R.C.M.) 1106A prior to the convening authority signing the Decision on Action (DoA) memorandum in his case; and (4) whether Appellant was deprived of his right to a unanimous verdict.

We agreed with Appellant with respect to issues (2) and (3), and remanded Appellant's case to the Chief Trial Judge, Air Force Trial Judiciary. *See United States v. Valentin-Andino,* 83 M.J. 537, 544 (A.F. Ct. Crim. App. 2023). We deferred addressing the other assignments of error until the record was returned to this court for completion of our review under Article 66(d), UCMJ, 10 U.S.C. § 866(d). *Id.* at 539. After the case was remanded, on 13 February 2023 the convening authority signed a new DoA memorandum replacing his predecessor's DoA memorandum. In the replacement memorandum, the convening authority took no action on findings or sentence and denied Appellant's deferment request.

Appellant, through counsel, now raises an additional issue: (5) given this court's finding that the record of trial was substantially incomplete, and given the Government's unexplained delay in re-docketing Appellant's case, the Government caused unreasonable post-trial delay such that Appellant is entitled to relief.

_____

[2] Unless otherwise noted, all references to the UCMJ and the Rules for Courts-Martial are to the 2019 *MCM*.

We find issues (2) and (3) have been resolved by the convening authority's replacement DoA memorandum and the new entry of judgment. We carefully considered issue (4) and find it does not warrant further discussion or relief.[3] *See United States v. Guinn,* 81 M.J. 195, 204 (C.A.A.F. 2021) (citing *United States v. Matias,* 25 M.J. 356, 361 (C.M.A. 1987)). As to the findings, we find no error materially prejudicial to a substantial right of Appellant and affirm. As to the sentence, we grant relief for issue (5) for unreasonable post-trial delay by modifying the sentence to a dishonorable discharge, reduction to the grade of E-2, and confinement for 90 days. *See United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016)

## I. BACKGROUND

On 19 May 2021, officer and enlisted members found Appellant guilty of one specification of sexually assaulting KG. KG and Appellant are both from Puerto Rico and quickly developed a friendship because of their common background. KG testified that her relationship with Appellant was platonic and that she did not have a romantic interest in him. She explained they had a close relationship akin to a brother and sister. Their relationship included acts of affection to include hugging, however KG explained the affection was friendly and not romantic in nature. On occasion, KG and Appellant engaged in a form of dancing "kind of like grinding," which she described as a style of dance "back home in Puerto Rico."

On 11 July 2019, Appellant and KG, along with other friends, attended a "Wing Night" at the on-base Liberty Club. The "Wing Night" event included dinner, music, drinks, and dancing. Appellant and KG engaged in close dancing, as they had done at previous "Wing Nights." KG testified that none of the previous "Wing Nights" led to sexual activities between her and Appellant. Interactions between Appellant and KG were captured by a security camera within the club to include KG hugging Appellant by the bar. The video footage also showed KG holding hands with Appellant and another Airman when departing the club. KG testified she held their hands because it was normal for her to hold hands with her friends.

KG, Appellant, and the other Airman arrived at her dorm room still holding hands. Upon arrival, KG and Appellant engaged in a video chat with KG's godfather; afterwards two other Airmen arrived at KG's dorm room. Eventually, all the other Airmen departed KG's dorm room except for Appellant.

---

[3] *See United States v. Anderson*, 83 M.J. 291 (C.A.A.F. 2023), *cert. denied*, 144 S. Ct. 1003 (2024).

With Appellant remaining in her room, KG went to sleep. KG testified on direct examination as to what happened afterwards:

Q. [KG], after you went to sleep, what is the next thing that you remember happening?

A. I wake up to [Appellant] having his fingers inside of me.

Q. All right. When you say his fingers inside of you — I know it's a tough thing to talk about, but specifically what — what do you mean when you say that?

A. From what I remember, I felt that he had at least one finger inside of my vagina.

Q. Okay. When you woke up, how were you positioned on the bed?

A. With my stomach down on the bed . . . .

. . . .

Q. At some point do you realize that it's [Appellant]?

A. Yes, sir.

Q. All right. How is [Appellant] positioned in the bed?

A. With his right hand propped on the bed and his left hand over me.

Q. So when you indicate that — propped on the bed; is he standing next to the bed, is he laying in the bed, where is he — where is he in relation to the bed?

A. Laying in the bed.

Q. Is he on his back, on his front, on his side?

A. On his side.

Q. And so which side is he on?

A. His right side.

Q. And you said that — tell me what he was doing with his right hand.

A. Kind of like propped up like this.

[Trial counsel]: All right. And for the record, the witness is kind of holding her right arm bent at the elbow, just kind of jutting directly out at a 90-degree angle from her body.

[Military judge to trial counsel]: Thank you.

[Trial counsel resumes examination of KG] Q. And what's [Appellant] doing with his left hand?

A. Going in and out of my vagina.

Q. Okay. So was there motion?

A. Yes, sir.

## II. DISCUSSION

### A. Legal and Factual Sufficiency

Appellant challenges the legal and factual sufficiency of his conviction arguing: (1) KG's testimony lacked credibility and reliability; and (2) the witnesses at the court-martial, to include KG, failed to conduct an in-court identification of Appellant. We resolve these issues adverse to Appellant and conclude the conviction is legally and factually sufficient.

#### 1. Law

We review issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted). "Our assessment of legal and factual sufficiency is limited to the evidence produced at trial." *United States v. Rodela*, 82 M.J. 521, 525 (A.F. Ct. Crim. App. 2021) (citing *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993)).

"The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (quoting *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017)). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted). The evidence supporting a conviction can be direct or circumstantial. *See United States v. Long*, 81 M.J. 362, 368 (C.A.A.F. 2021) (citing R.C.M. 918(c)) (additional citation omitted). "[A] rational factfinder [may] use [its] 'experience with people and events in weighing the probabilities' to infer beyond a reasonable doubt" that an element was proven. *Id.* at 369 (quoting *Holland v. United States*, 348 U.S. 121, 140 (1954)). "The standard for legal sufficiency involves a very low threshold to sustain a conviction." *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (alteration and citation omitted). The test for legal sufficiency "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *United States v. Oliver*, 70 M.J. 64, 68 (C.A.A.F. 2011) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1973)).

"The test for factual sufficiency is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we are ourselves convinced of the appellant's guilt beyond a reasonable doubt." *Rodela*, 82 M.J. at 525 (alterations, internal quotation marks, and citation omitted). "In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (alteration in original) (quoting *Washington*, 57 M.J. at 399), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018). "The term reasonable doubt . . . does not mean that the evidence must be free from conflict." *Id.* (citing *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986)).

For Appellant to be found guilty of sexual assault in violation of Article 120, UCMJ, as alleged in the Specification of the Charge, the members were required to find the following three elements beyond a reasonable doubt: (1) Appellant committed a sexual act upon KG by penetrating KG's vulva with his finger; (2) Appellant did so without the consent of KG; and (3) Appellant did so with the intent to gratify his sexual desire. *See MCM*, pt. IV, ¶ 60.b.(2)(d).

**2. Analysis**

Appellant argues "numerous inconsistencies and incongruities undermine" KG's credibility. Appellant also argues KG's testimony lacked sufficient corroboration and that no witnesses identified Appellant in the courtroom as the person seated at the defense table. Appellant's argument as to inconsistencies focuses on the security camera footage which depicts physical interactions between KG and Appellant at the Liberty Club. Appellant also argued the lack of injuries found during KG's sexual assault medical examination did not corroborate her testimony and "[t]he DNA analysis presented in the [G]overnment's case-in-chief did not strongly corroborate [KG's] already doubtful testimony."

"As an evidentiary standard, proof beyond a reasonable doubt does not require more than one witness to testify credibly." *United States v. Cabuhat*, 83 M.J. 755, 771 (A.F. Ct. Crim. App. 2023) (citing *United States v. Rodriguez-Rivera*, 63 M.J. 372, 383 (C.A.A.F. 2006)). We are not persuaded by Appellant's arguments that inconsistencies or incongruities in KG's testimony significantly undermine her credibility. Similarly, we find the medical and DNA evidence does not cause us to question the legal or factual sufficiency of the conviction.

We find little merit in Appellant's argument regarding the lack of any in-court identification of Appellant by a witness. At no point during the trial was

the identity of Appellant a contested issue. Although the record does not indicate any witnesses pointed at Appellant during their testimony, Appellant was identified by name by KG and other witnesses. Further, the Government and Appellant introduced video evidence in which Appellant was clearly identified and visible in the videos.

Having given full consideration to Appellant's arguments and drawing every reasonable inference from the evidence of record in favor of the Government, we conclude the evidence was legally sufficient to support Appellant's conviction. Additionally, having weighed the evidence in the record of trial, and having made allowances for the fact that the members personally observed the witnesses and we did not, we also find the evidence factually sufficient.

## B. Post-trial Delay

Appellant asserts:

> While there is no evidence the [G]overnment acted in bad faith in omitting the audio of the proceedings from the original record of trial or in delaying the docketing of this case post-correction, the [G]overnment's dilatory conduct reveals its indifference. On the issue of institutional neglect, it must be noted that docketing incomplete records of trial is commonplace for the [G]overnment.

### 1. Additional Background

In his post-remand brief to this court on 25 May 2023, Appellant asserted his right to speedy appellate review.

On 28 September 2023, we ordered the Government to show good cause as to why the court should not remand the record for correction again or take other corrective action. Our order stated, in part:

> The record of trial was re-docketed with this court on 20 April 2023. Upon this court's review of the record, we discovered the record does not include: (1) documentation that the convening authority served Appellant with victim matters submitted under R.C.M. 1106A after our remand; and (2) Appellant's 10 February 2023 deferment request.

(First citing R.C.M. 1112(f)(4) (requiring requests for deferment to be attached to the record); and then citing Department of the Air Force Manual 51-203, *Records of Trial*, ¶ 1.4.3 (21 Apr. 2021) (requiring an appellant's receipt of victim matters submitted under R.C.M. 1106A to be inserted into the record)).

In response to our order, on 10 October 2023 the Government filed a motion to attach a declaration from Captain (Capt) AM, Chief of Military Justice at Royal Air Force Lakenheath, United Kingdom—the location of the base legal

7

office responsible for processing Appellant's record of trial. Capt AM explained his office received a request to "locate" the missing items from the record noted in our show cause order. Capt AM declared:

> Our office located and provided those documents on 10 October 2023. I was assigned to the military justice section in June of 2023, the remainder of my time with the office has been in a civil law context. The individuals with knowledge of this case have since moved on to different offices and assignments, I cannot speak to the factors which may have led to these documents not being appropriately documented.

Capt AM further explained, "[t]he attached documents were found in email traffic between the case paralegal and the [d]efense [c]ounsel, we were able to find them due to other paralegals being included in the conversation." We granted the Government's motion to attach.

### 2. Law

Our court reviews de novo whether an appellant has been denied the due process right to speedy appellate review. *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006) (citations omitted). A presumption of unreasonable delay arises when appellate review is not completed, and a decision rendered within 18 months of a case being docketed. *Id.* at 142. A presumptively unreasonable delay triggers an analysis of the four factors specified in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Moreno*, 63 M.J. at 135 (citations omitted). While a presumptively unreasonable delay satisfies the first factor, the Government "can rebut the presumption by showing the delay was not unreasonable." *Id.* at 142. "Assessing the fourth factor of prejudice, we consider the interests of prevention of oppressive incarceration pending appeal; minimization of anxiety and concern of those convicted awaiting the outcome of their appeals; and limitation of the possibility that . . . grounds for appeal, and . . . defenses in case of reversal and retrial, might be impaired." *Cabuhat*, 83 M.J. at 773 (internal quotation marks omitted) (citing *Moreno*, 68 M.J. at 138–39). In the absence of such prejudice, a due process violation exists only when "the delay is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

We are required by Article 66(d), UCMJ, to determine which findings of guilty and the sentence or part thereof "should be approved." 10 U.S.C. § 866(d); *see also United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002). In *Tardif*, the United States Court of Appeals for the Armed Forces recognized

the Courts of Criminal Appeals have authority under Article 66, UCMJ,[4] "to grant relief for excessive post-trial delay without a showing of 'actual prejudice' within the meaning of Article 59(a)[, UCMJ]." *Id*. (citation omitted). *Tardif* relief can be granted "where there has been unreasonable post-trial delay;" "extraordinary" circumstances are not required. *Toohey*, 63 M.J. at 362 (citing *Tardif*, 57 M.J. at 224). The essential inquiry is whether, given the post-trial delay, the sentence "remains appropriate[ ] in light of all circumstances." *Tardif*, 57 M.J. at 224.

> We consider the following to determine if *Tardif* relief is appropriate:
>
> 1. How long did the delay exceed the standards set forth in *United States v. Moreno*, 63 M.J. 129 (C.A.A.F. 2006)?
>
> 2. What reasons, if any, has the [G]overnment set forth for the delay? Is there any evidence of bad faith or gross indifference to the overall post-trial processing of this case?
>
> 3. Keeping in mind that our goal under *Tardif* is not to analyze for prejudice, is there nonetheless some evidence of harm (either to the appellant or institutionally) caused by the delay?
>
> 4. Has the delay lessened the disciplinary effect of any particular aspect of the sentence, and is relief consistent with the dual goals of justice and good order and discipline?
>
> 5. Is there any evidence of institutional neglect concerning timely post-trial processing, either across the service or at a particular installation?
>
> 6. Given the passage of time, can this court provide meaningful relief in this particular situation?
>
> We consider no single factor dispositive, and a given case may reveal other appropriate considerations for this court in deciding whether post-trial delay has rendered an appellant's sentence inappropriate.

*Gay*, 74 M.J. at 744 (footnote omitted).

**3. Analysis**

Appellant contends that he "is entitled to sentence relief because the [G]overnment violated his due process right to speedy appellate review. Even if this [c]ourt finds Appellant has not suffered prejudice, he is nevertheless entitled to relief pursuant to this [c]ourt's Article 66, UCMJ[,] powers." After

---

[4] The court in *Tardif* applied a version of Article 66, UCMJ, which pertinent language is substantially similar to the 2019 *MCM*.

careful consideration, we do not find a due process violation; however, we agree with Appellant that relief pursuant to our Article 66, UCMJ, authority is warranted for unreasonable post-trial processing errors.

We issued our first opinion in this case within 18 months of the case being docketed. After our remand, we issued this opinion within 18 months of the case being re-docketed with this court. *See United States v. Phillips*, No. ACM 38771 (f rev), 2019 CCA LEXIS 102, at *28 (unpub. op.) (citing *Moreno*, 63 M.J. at 142) (finding no presumption of facially unreasonable delay when it issued its initial and post-remand decisions "within 18 months of the respective docketing dates"). Consequently, we find no presumption of unreasonable delay. As we find no particularized prejudice, and the delay is not so egregious as to adversely affect the public's perception of the fairness and integrity of the military justice system, there is no due process violation. *See Toohey*, 63 M.J. at 362.

However, after considering the *Gay* factors, we conclude there is basis for relief under Article 66(d)(2), UCMJ, or *Tardif* in the absence of a due process violation. *See Gay*, 74 M.J. at 744. We specifically address the second and fifth factors in more detail *infra.*

### a. Gross Indifference to Post-trial Processing

Appellant's case was remanded to address two errors: failure to serve victim matters on Appellant before convening authority action, and failure to include a substantial verbatim audio record of the proceedings. *See Valentin-Andino*, 83 M.J. at 544. Although the Government corrected the error in the record we identified in our prior opinion, the Government returned an incomplete record to the court for re-docketing. Missing from the record was documentation that the convening authority served Appellant with victim matters submitted under R.C.M. 1106A after our remand, and Appellant's 10 February 2023 deferment request. A representative of the Government–the Chief of Military Justice for the office processing the record—could not "speak to the factors which may have led to these documents not being appropriately documented." Ultimately, the documents were retrieved from a paralegal's email communication rather than the base legal office's copy of the record of trial. We find the totality of the Government's repeated errors regarding the record demonstrates gross indifference to post-trial processing in this case which impacted timely processing. Unfortunately, this case is not an aberration.

### b. Institutional Neglect Concerning Timely Post-trial Processing

Post-trial processing errors like the ones highlighted in this case are happening at an alarming frequency in the Air Force. Accordingly, we find a systemic problem indicating institutional neglect. These errors in records of trial cause delays in appellate review.

In fiscal year 2023, our court remanded four cases, to include Appellant's case, due to the record of trial not containing audio recording of the court-martial. *See United States v. Wilson*, No. ACM 40274, 2023 CCA LEXIS 343 (A.F. Ct. Crim. App. 16 Aug. 2023) (unpub. op.) (missing the final open session); *Valentin-Andino*, 83 M.J. at 539 (missing all open sessions but arraignment); *United States v. McCoy*, No. ACM 40119, 2022 CCA LEXIS 632 (A.F. Ct. Crim. App. 31 Oct. 2022) (order) (missing all open sessions); *United States v. Brown*, No. ACM 40066, 2022 CCA LEXIS 625 (A.F. Ct. Crim. App. 25 Oct. 2022) (order) (missing several days of audio).

Also in fiscal year 2023, we remanded 16 cases—one of them twice—due to incomplete records of trial. *See United States v. Gammage*, No. ACM S32731 (f rev), 2023 CCA LEXIS 421 (A.F. Ct. Crim. App. 29 Sep. 2023) (order) (remanded a second time for a "corrected" attachment to the same exhibit missing photographs); *United States v. Blackburn*, No. ACM 40303, 2023 CCA LEXIS 386 (A.F. Ct. Crim. App. 11 Sep. 2023) (order) (missing three attachments to an appellate exhibit); *United States v. Gonzalez*, No. ACM 40375, 2023 CCA LEXIS 378 (A.F. Ct. Crim. App. 8 Sep. 2023) (unpub. op.) (missing two attachments to a prosecution exhibit); *Wilson*, unpub. op. at *6–7 (missing a convening order); *United States v. Portillos*, No. ACM 40305, 2023 CCA LEXIS 321 (A.F. Ct. Crim. App. 1 Aug. 2023) (unpub. op.) (missing an attachment to an appellate exhibit and finding error in convening authority post-trial action); *United States v. Hubbard*, No. ACM 40339, 2023 CCA LEXIS 263 (A.F. Ct. Crim. App. 15 Jun. 2023) (order) (missing an attachment to a prosecution exhibit); *United States v. Gammage*, No. ACM S32731, 2023 CCA LEXIS 240 (A.F. Ct. Crim. App. 5 Jun. 2023) (order) (remanded the first time for missing eight attachments to a prosecution exhibit), *United States v. Simmons*, No. ACM 40462, 2023 CCA LEXIS 236 (A.F. Ct. Crim. App. 5 Jun. 2023) (order) (missing 23 preliminary hearing officer (PHO) exhibits); *United States v. Goodwater*, No. ACM 40304, 2023 CCA LEXIS 231 (A.F. Ct. Crim. App. 31 May 2023) (order) (missing two prosecution exhibits); *United States v. Irvin*, No. ACM 40311, 2023 CCA LEXIS 201 (A.F. Ct. Crim. App. 12 May 2023) (order) (missing two attachments to a prosecution exhibit); *United States v. Johnson*, No. ACM 40291, 2023 CCA LEXIS 169 (A.F. Ct. Crim. App. 11 Apr. 2023) (order) (missing 13 prosecution exhibits and one PHO exhibit); *United States v. Pulley*, No. ACM 40438, 2023 CCA LEXIS 155 (A.F. Ct. Crim. App. 31 Mar. 2023) (order) (missing two prosecution exhibits and the attachments to a third prosecution exhibit); *United States v. Paugh*, No. ACM 40231, 2023 CCA LEXIS 119 (A.F. Ct. Crim. App. 7 Mar. 2023) (order) (two prosecution exhibits were missing files or contained inoperable files); *United States v. Stafford*, No. ACM 40131, 2022 CCA LEXIS 654 (A.F. Ct. Crim. App. 8 Nov. 2022) (order) (missing four appellate exhibits and the supplemental PHO report); *United States v. Welsh*, No. ACM S32719, 2022 CCA LEXIS 631 (A.F. Ct. Crim. App.

26 Oct. 2022) (order) (missing eight attachments to a prosecution exhibit); *United States v. Lampkins*, No. ACM 40135, 2022 CCA LEXIS 750 (A.F. Ct. Crim. App. 25 Oct. 2022) (order) (missing an appellate exhibit); *United States v. Ort*, No. ACM 40261 (f rev), 2022 CCA LEXIS 571 (A.F. Ct. Crim. App. 11 Oct. 2022) (order) (remanded a second time for an issue with a PHO exhibit).[5]

To be clear, we do not find that sentence relief is per se warranted due to errors in compilation of a complete record of trial. Considering all the facts and circumstances of Appellant's case, we exercise our Article 66(d), UCMJ, authority to grant *Tardif/Gay* relief—by not affirming part of the reduction in grade—for the multiple errors leading to unreasonable delays impacting completion of appellate review.

### III. CONCLUSION

The findings as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. We affirm only so much of the sentence as entered which calls for a dishonorable discharge, confinement for 90 days, and reduction to E-2. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence, as modified, are **AFFIRMED**.

FOR THE COURT

FLEMING E. KEEFE, Capt, USAF
Acting Clerk of the Court

---

[5] Appellant's brief cites to additional cases supporting his contention of institutional neglect.